**Thierno Abubaker BAH,
Plaintiff-Appellee,**

v.

**Sarah Frances Oden BAH,
Defendant-Appellant.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Dec. 15, 1983.

Permission to Appeal Denied by
Supreme Court March 6, 1984.

Steve Cobb, Nashville, for plaintiff-appellee.

Joe M. Haynes, Haynes & Associates, Goodlettsville, for defendant-appellant.

## OPINION

CONNER, Judge.

This is a custody dispute incident to a divorce action. On February 14, 1983, the husband, plaintiff-appellee, Thierno Abubaker Bah, was awarded a divorce based on "cruel and inhuman treatment" from the defendant-appellant, Sara Frances Oden Bah,[1] as well as custody of their then 2½ year old child, Thierno Abdoul-Aziz Bah.

Mrs. Bah appeals only the award of custody. She raises two issues. They are:

   I.  Whether the trial court erred in rejecting the "tender years" doctrine?

   II.  Whether the trial court erred in finding that the best interests of the child were served by full custody of the father?

Sitting without a jury, the trial judge made certain findings of fact. We recite those material to this appeal:

1. Sarah Frances Oden Bah has, by her own admission and from the testimony of witnesses, committed adultery.

. . . .

3. Both parties initially participated in the rearing of their child, Thierno Abdoul-Aziz Bah, and both parties exhibited parenting skills.

4. After difficulties developed in the marriage, this situation changed and Mrs. Bah began to behave in a manner

---

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

which has jeopardized the welfare of the parties' child.

5. Mrs. Bah has behaved in an immature and irresponsible manner, has exhibited emotional instability, and has disrupted the life of the parties' child for insignificant reasons. She admitted that she is emotional and she becomes fearful over rather insignificant incidents. She exhibited a fear of staying in her own home because of strange occurances (sic) which she did not bother to report to the manager of her apartment complex and did not report to the police.

6. Mrs. Bah disrupted the life of the parties' child by moving out of her separate home and back into that of her mother. Her mother's home situation and atmosphere, though not completely her fault, makes it not in the best interest and welfare of the child morally to place him there. The mother has taken several of her daughters in to live with her from time to time. One daughter lives in the home with three illegitimate children while another daughter also has three illegitimate children.

7. From all of the testimony, the Court finds that it would jeopardize the welfare of the child to vest custody with Mrs. Bah.

8. Mr. Bah has exhibited himself to be a more responsible parent who has provided a home for himself and the parties' child. He has shown himself to be more mature.

9. Both parties are employed.

10. Mr. Bah is Islamic while Mrs. Bah is of the Christian faith, a difference which the parties were aware of at the time of their marriage.

11. Mrs. Bah is a citizen of the United States while Mr. Bah is not.

All of these findings of fact are justified by proof in the record.

The matter is to be reviewed by us *de novo* with a presumption of correctness of the ruling of the trial judge. T.R.A.P. 13(d). We are not unmindful of *Riddick v. Riddick*, 497 S.W.2d 740 (Tenn.App.1973), which states that the presumption is eliminated in child custody cases and the review is strictly *de novo. Id.* at 742. However, that case was decided prior to the passage of the T.R.A.P. rules and no exception from the normal review in non-jury matters is made therein for custody cases. In any event, *Riddick* holds that:

> [T]his Court will, however, give great weight to the decision of the trial court because the judge saw the witnesses face to face and heard them testify; this rule being based upon the assumption that the trial judge did not act arbitrarily or willfully but with regard to what is right and equitable, *considering first the child's best interest as directed by his reason and conscience toward the child's welfare.*

*Id.* (emphasis supplied).

Obviously, in all custody cases the review which we must conduct will be the most careful humanly possible. Or stated differently, neither trial nor appellate judges have any responsibility greater than to attempt to correctly adjudicate child custody disputes. However, as recognized in *Riddick*, the trial judge, not the appellate court, has the opportunity to observe the witnesses. All we can review is the cold printed word and the exhibits.

Whatever our misgivings about the standard of review expressed in *Riddick*, we are in agreement that the child's best interest is the paramount consideration. It is the polestar, the *alpha and omega*. We think Judge Avery said it best in *Bevins v. Bevins*, 53 Tenn.App. 403, 383 S.W.2d 780 (1964):

> The real matter to be considered is what is the best thing to do with these children that they may be left in a home where they are nurtured, loved, appreciated and *where the environment is such that is conducive not only to the physical welfare of the child, but to its emotional and moral welfare, and where it can have the instructions from those who have control over it to inspire it to activities so as to develop a personality prepared for a life of service, and to*

*successfully compete in the society which the child faces when an adult.*

53 Tenn.App. at 410–11, 383 S.W.2d at 783 (emphasis supplied).

This is and must remain the true test for the award of custody. To arrive at the point of deciding with whom to place a child in preparation for a caring and productive adult life requires consideration of many relevant factors, including but certainly not limited to the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the associations and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

The mother asserts that in the instant case the "presumption that a child of tender years should be placed with its mother" was not given proper emphasis by the trial court. Mrs. Bah asserts that this principle should have "swung the pendulum of custody" in her favor and that therefore a reversal is required. Clearly, the doctrine was considered below for at the conclusion of the proof and in rendering a decision the trial judge said: "The Court is very well aware of the *Weaver* case." *Weaver v. Weaver,* 37 Tenn.App. 195, 261 S.W.2d 145 (1953), sets forth the tender years doctrine in these terms:

A mother, except in extraordinary circumstances, should be with her child of tender years. The courts have repeatedly recognized this as a primary doctrine.

Normally, such a child will not be taken away from its mother unless it is demonstrated that to leave the child with its mother would jeopardize its welfare, both in a physical and in a moral sense.

This court believes that the so-called "tender years doctrine" is a factor—but only one factor—to be considered in the overall determination of what is in the best interests of the child.

We adopt what we believe is a common sense approach to custody, one which we will call the doctrine of "comparative fitness." The paramount concern in child custody cases is the welfare and best interest of the child. *Mollish v. Mollish,* 494 S.W.2d 145, 151 (Tenn.App.1972). There are literally thousands of things that must be taken into consideration in the lives of young children, *Smith v. Smith* 188 Tenn. 430, 437, 220 S.W.2d 627, 630 (1949), and these factors must be reviewed on a comparative approach:

Fitness for custodial responsibilities is *largely a comparative matter.* No human being is deemed perfect, hence no human can be deemed a perfectly fit custodian. Necessarily, therefore, the courts must determine which of two or more available custodians is more or less fit than others.

*Edwards v. Edwards,* 501 S.W.2d 283, 290–91 (Tenn.App.1973) (emphasis supplied).

To the extent the "tender years" doctrine has continued efficacy it is simply one of many factors to be considered in determining custody, not an unyielding rule of law. The only rigid principle is and must be that the best interests of the child are paramount in any custody determination.

Times have changed. Many mothers now work, either by necessity or choice, and no longer assume the primary nurturing role for small children. We believe the "presumption of tender years" espoused in *Weaver* is no substitute for an individualized investigation involving custody in every case. Such factors as the warmth, consistency, and continuity of the relationship between parent and child and not the sex of the parent actually govern a child's best interest. These things can be provided by the father as well as the mother.

So that there will be no misunderstanding in the future, we hold that it is not necessary to find that a mother is unfit in order to award custody of a minor child to the father, or for that matter another third party when it is in the child's best interests. All the relevant circumstances of the case, including those specifically enumerated herein, should be considered, and principal responsibility for rearing a minor should be placed with the person most fit to do so.

■ We believe that is precisely what the trial judge did here and why custody was awarded to the father. The trial court made no finding that the mother was unfit and, based on this transcript, we think such a conclusion would have been unjustified. However, we think the trial judge was satisfied that *for now* the child's best interests would be served in the custody of the father, with liberal visitation to the mother. Without question the trial judge was concerned, as are we, with the environment in which young Mr. Bah would be placed and the deleterious influences to which he might be exposed in the home of the mother of Mrs. Bah. No doubt the trial court believed strongly that there was a difference in the maturity and emotional stability of the mother and the father. Of course, that court is in a far superior position to assess these qualities than this court because of the ability to view the witnesses and assess their demeanor, mannerisms and other visual and audio characteristics not apparent in the transcript. However, insofar as these qualities can be assessed based upon past conduct, the record indicates the father to be the most stable and emotionally mature parent at this time.

It is of critical importance that this and any other child have a meaningful relationship with both parents where possible, irrespective of where primary custody is placed. In this case it is both possible and desirable and each parent is to be commended for caring. The testimony was that neither was a bad parent. Mr. Bah originally sought only joint custody of the boy. Though joint custody awards have many drawbacks, logistically and emotionally, especially as a child reaches school age, it is conceivable that such an arrangement might be in this youngster's best interest until he reaches school age. Or it may be that the circumstances are now or soon will be such that Mrs. Bah should have primary custody. Without doubt she loves her son, wants to attend to him, is well educated with a college degree in psychology and economics, and has responsible employment. No doubt Mr. Bah is less than perfect (as are we all). He has had various periods of unemployment, according to this record has now only temporary employment and has admitted once striking Mrs. Bah in an argument, though he contended there was substantial provocation. However, he too is a man of letters, being fluent in six different languages. He intends to become a U.S. citizen in December. He loves and is able to provide for the boy.

In the event that circumstances have changed, such as a move by Mrs. Bah to more satisfactory quarters, she can, of course, file a petition to change custody and can address the matters which were of concern to the trial court and are of equal concern here. But for now, based on this record, we are satisfied that the best interests of the child are served by the award of custody to Mr. Bah and that the trial court was entirely correct in so holding.

Mr. Bah has asked us to declare the "tender years presumption" unconstitutional based upon the authority of *Orr v. Orr*, 440 U.S. 268, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979). *Orr* rejects gender-based classification not substantially related to some legitimate and important governmental objective.

■ We believe it is likely that, as applied by the courts of Tennessee, the "Tender Years Doctrine" is not a law or a rule of law, and may not be declared unconstitutional as statutes are declared unconstitutional. However, we are not unmindful of *Ex Parte Devine*, 398 So.2d 686 (Ala.1981), a well-reasoned opinion wherein Alabama rejected in its entirety the "tender years" doctrine based both on changing

circumstances or times and the *Orr* holding. We are also aware that other states have totally ceased to apply the rule. *See* Annot., 70 A.L.R.3d 262 (1983 Supp.). Mr. Bah makes a very persuasive argument that the "presumption," to the extent it still has efficacy, should be rejected in its entirety. However, it is not necessary to reach the question of the constitutionality of the "tender years doctrine" in order to decide this case. It is an established principle of law that constitutional issues need not be decided where a case can be resolved on nonconstitutional grounds. *Watts v. Memphis Transit Management Co.*, 224 Tenn. 721, 727, 462 S.W.2d 495, 498 (1971).

Accordingly, the judgment of the trial court is affirmed and this cause is remanded. The costs are taxed equally against Mr. and Mrs. Bah.

AFFIRMED AND REMANDED.

LEWIS and CANTRELL, JJ., concur.