**Ronnie Lynn WOODARD, Defendant–Appellee,**

v.

**Barbara Gail Brooks WOODARD (Shanks), Plaintiff–Appellant.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Oct. 13, 1989.

Permission to Appeal Denied by Supreme Court Jan. 2, 1990.

Robert L. Jackson, Robert L. Jackson & Associates, Nashville, for plaintiff-appellant.

Stephen W. Pate, Nashville, for defendant-appellee.

## OPINION

CANTRELL, Judge.

The primary issue in this appeal is whether the trial court erred in modifying the parties' original divorce decree by ordering the physical custody of the parties' two minor children to be split on a six month basis as opposed to being in the mother's continuous physical custody. A second issue on appeal is whether the trial court erred in forgiving the alleged child support arrearage against the defendant, Ronnie Lynn Woodard.

On April 28, 1983, plaintiff, Barbara Woodard Shanks was awarded a divorce from the defendant on the ground of irreconcilable differences. The property settlement, which was approved by the trial court and made part of the final decree, provided, *inter alia*, that the parties would have joint custody of the two minor children. The decree also stated that the children were presently residing with their mother and that Mr. Woodard would pay $50.00 per week child support as long as the children resided with their mother. When, and if, the children resided with their father, the mother would pay $50.00 per week in child support if she was employed at that time.

In December of 1987, defendant filed a "petition to reform contract" alleging that the custody agreement had not been interpreted by the parties in a satisfactory manner. Mr. Woodard proposed a split custody arrangement in which the children would reside with one parent from January 1st to June 30th and with the other parent from July 1 to December 31st of each year. The parent not having custody would have weekend visitation and other special visitation periods. Child support would not be paid by either party.

Following a hearing, the trial court entered an order modifying the original decree and adopting the defendant's proposal for split custody. Visitation by the non-custodial parent was allowed on alternate weekends rather than on every weekend. The trial court also dismissed the mother's counter petition and denied her prayer for a judgment against the father for past child support.

It is a well settled proposition that a custody order is res judicata as to parties and cannot be modified absent a showing of change in material circumstances affecting the welfare of the children. *Arnold v. Gouvitsa*, 735 S.W.2d 458 (Tenn.App.1987). The burden is therefore upon the party who seeks to modify the court's custody decree, in this case the defendant, to prove that a material change in circumstances has occurred which requires an alteration of custody. *Phillips v. Phillips*, 1987 WL 11129 (Court of Appeals, filed in Nashville, May 22, 1987).

The defendant, however, did not allege any change in circumstance in his petition to reform the contract. Instead, he simply stated that the custody arrangement "has not been interpreted by the parties in a satisfactory manner for either party or for the children." He then set forth his proposal for the split custody arrangement.

The trial court ordered the modification as requested by defendant but made no finding of a material change of circumstances affecting the welfare of the children to warrant this modification.

At trial both parents acknowledged that the children loved the other parent and were happy in both homes. The parties were divorced in late April of 1983. It is undisputed that from that date through August of 1983 that the children resided with their mother and that from August 1983 through February 1984 the children resided with their father. After February of 1984, there is a dispute between the parties regarding where their children resided. Mr. Woodard testified that from February of 1984 to August of 1984 that the children resided with their mother. He also testified that an agreement to split physical custody 50–50 and to discontinue

child support was made in August of 1984 and that from that time until September of 1987 that the parties adhered to this agreement.

According to Mr. Woodard the children would alternate spending four nights at one residence and three nights at the other each week. His new wife, Nancy Woodard, also testified that such an agreement had been made and adhered to for the stated period. Mr. Woodard testified that in September of 1987 Ms. Shanks discontinued the agreement and requested child support and only allowed the children to visit him on alternate weekends and during the summer.

Ms. Shanks denied that any such agreement had ever been made between the parties and testified that the children had primarily resided with her since February of 1984. She said that in September of 1984 that Mr. Woodard had requested that his new wife babysit the children rather than someone else. Ms. Shanks stated that she had reluctantly agreed to this arrangement and would take the children to his home in the mornings and pick them up in the afternoons and that they only spent two or three nights a week at their father's residence.

On cross-examination Ms. Shanks did not recall but did not dispute making a statement regarding her application for food stamps to Linda Dean, a case worker for the Department of Human Services, on or about July 26, 1986 that her children were staying with their father the majority of the time. Neither did she recall nor dispute a statement made to Linda Dean in September of 1986 that her children stayed with their father a majority of the time and that she worked and had them only on the weekends.

Ms. Shanks did not remember making either statement. She did say, however, that because Mr. Woodard's new wife was babysitting the children during the week that they were at his house about half the time. She said that they usually spent only two nights with him per week and sometimes three but never more than that.

The primary consideration in both the original custody award and in a modification of the custody award is to do what the best interest of the children demands. Tenn.Code Ann. § 36–6–101(a) (1989); *Bush v. Bush*, 684 S.W.2d 89, 93 (Tenn. App.1984). We find no evidence in the record that there has been a change in circumstance that requires the custody order to be modified to a split custody arrangement. There are no allegations of moral unfitness on either side. In fact, both parents testify that they believe the other to be a good parent and that they are confident that the children love and enjoy both parents. There is no proof in the record that the best interests of the children would be served by changing the original custody decree.

In this case it is true that both parties have remarried. Mr. Woodard's new wife brought two children into their relationship from a previous marriage and they have a child of their own as well. They have three bedrooms and one bath in one side of a duplex which they rent. If the split custody arrangement is upheld, they hope to rent the other side of the duplex which would add two bedrooms and one bath to their home. They have access to the eighty acre farm on which the duplex is located.

Ms. Shanks has also remarried and she and her husband have a new baby. They have purchased a four bedroom home and Ms. Shanks is now a full-time housewife.

It cannot be denied that the circumstances in this case have changed. Both parents have remarried and both have new homes and new children. Yet, the ultimate goal of the court is defined as the best interest of the children. *Dantzler v. Dantzler*, 665 S.W.2d 385 (Tenn.App.1983).

We believe that since there is no proof in this record that it is in the best interest of the children in this case to change the original custody decree, the original decree should be left undisturbed. We, therefore, reverse the custody modification of the trial court and restore the original custody agreement.

■ The second issue in this case is whether the trial court erred in forgiving the alleged child support arrearage against the defendant. In her counter-complaint, the plaintiff avers delinquent child support in the amount of $1,300.00.

On this issue Mrs. Shanks has the burden of proof and we find the proof to be inadequate to support an order for unpaid support in any amount. The original decree ordered Mr. Woodard to pay $50.00 per week for those periods when the children were actually with their mother. The record is so unclear as to the periods when the children were with their mother that we cannot say the proof preponderates against the trial judge's findings that Mr. Woodard was not in arrears in his child support obligation.

The judgment of the court below is reversed in part, affirmed in part, and remanded to the Chancery Court of Robertson County for any further proceedings necessary. Tax the costs on appeal to the parties equally.

LEWIS and KOCH, JJ., concur.