ANTHONY LEE EDEN,                    )
                                     )
         Petitioner/Appellant,       )          Appeal No.
                                     )          01-A-01-9609-CV-00427
v.                                   )
                                     )          Davidson Circuit
CHERYL ANN EDEN,                     )          No.    92D-3002
                                     )
         Respondent/Appellee.        )

FILED

March 5, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

MIDDLE SECTION AT NASHVILLE

APPEAL FROM THE CIRCUIT COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE MURIEL ROBINSON, JUDGE

HELEN SFIKAS ROGERS
Jones & Rogers
Suite 1550, SunTrust Bank Building
201 Fourth Avenue North
Nashville, Tennessee 37219
         ATTORNEY FOR PETITIONER/APPELLANT


MARY ANNE KEVIL
Kevil & Johnson
Belle Meade Office Park
4535 Harding Road, Suite 100
Nashville, Tennessee 37205-2120
         ATTORNEY FOR RESPONDENT/APPELLEE

AFFIRMED AND REMANDED

SAMUEL L. LEWIS, JUDGE

# MEMORANDUM OPINION[1]

Petitioner/appellant, Anthony Lee Eden ("Father"), appeals a decision of the Fourth Circuit Court of Davidson County. The court denied Father's petition to change custody, increased his child support, took away his Wednesday night visitation, and extended his summer visitation by two weeks. The facts out of which this matter arose are as follows.

The Fourth Circuit Court of Davidson County granted the parties an absolute divorce in December 1993. Respondent/appellee, Cheryl Ann Eden ("Mother"), received sole custody of the parties' three minor children. The court ordered Father to pay $600.00 per month in child support and granted him visitation every other weekend, Wednesday night, and one month a summer.

Father filed a petition to change custody on 17 October 1995. At that time, Father lived in his brother and sister-in-law's five-bedroom house in Madison, owned fifty percent of a cabinet business, and earned approximately $1,500.00 a month. Mother and the children lived in a two-bedroom apartment, and Mother worked two jobs earning approximately $1,700.00 a month. Mother quit her second job prior to trial. The children were ages 10, 12, and 14.[2]

In the petition, Father alleged the children were left alone after school and on certain evenings and they were frightened. He also alleged that Mother took the children to a restaurant during happy hour so she could spend time with her friends. Father alleged Mother had male friends stay the night when the children were at her apartment and she engaged in sexual activities when the children were visiting Father. Finally, Father alleged the children expressed a desire to live with him. In response, Mother filed a counter-petition asking the court to raise the monthly child support, to limit Father's telephone calls to the children, and to enjoin him from attempting to

---

[1]Court of Appeals Rule 10(b):
The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion, it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

[2]On 23 October 1996, the parties filed a joint motion for the consideration of post-judgment facts. The parties asked this court to consider the fact that Mother moved to a new two-bedroom apartment and that the children changed schools. We granted the motion on 25 October 1996.

alienate the children's affections for Mother.

Both the parties and the children testified at the hearing. Following the hearing, the trial court found, in pertinent part, as follows:

> These parties were divorced by this Honorable Court on November 16, 1993. We are fortunate to have the same parties, the same children, the same lawyers, and the same judge.
>
> I recall that this divorce case was bitterly contested; custody was contested at that time. The issue of custody was resolved in favor of the mother, the Court finding that to be the best interests of these three children that custody remain with their mother.
>
> At that time, there was a [sic] difficulty determining the earning capacity of the father and the Court set the amount of six hundred dollars as child support. I don't know whether there was a declaration in that final decree or not. I don't think it was at the time.
>
> He owns his own business. There was some proof regarding whether or not Mr. Eden owned this business and now, today, he does own this business. In any event, at that point, I arrived at the figure of six hundred dollars a month thinking that he was underemployed at that time.
>
> I think as of today this man is still underemployed; he seems to have a lot of free time and the mother appears to work two jobs. So I might suggest to Mr. Eden that maybe, if he can't make sufficient income on the cabinet business, maybe he ought to consider a second job to help with the support of the children.
>
> He is asking the court to be awarded custody of these children, yet I have to be concerned about his financial situation in that regard. It appears also today that the mother is strapped financially due to the fact that the father's child support, although current, the amount of six hundred dollars is totally inadequate.
>
> It appears from the proof that the mother has attempted to have a single life, has had men friends and, on the occasions that she has brought one to the home, she's been criticized by the children. However, there's absolutely no evidence of misconduct on the part of Ms. Eden in the presence of these children.
>
> Its unfortunate that they found these objects but she denies that she knew anything about them.[3] And there's some discrepancy in the court's mind, although we do have an exhibit, whether or not

---

[3]There was testimony the parties' youngest son, Lyle, found a condom and wrapper in or by the bathroom trash can and the daughter, Lindsey, found a condom wrapper in her bed.

this occurred. But, if it did, its not so sufficient as it would be shocking to the Court.

I would just hope that maybe Ms. Eden ought to clean her house better if that, in fact, occurred. But she said that she didn't know anything about it. And I'm a little bit concerned about why these children would not go directly to the mother with this instead of going to the father.

The Court finds from the proof presented that these children have been encouraged to demean their mother and they've set upon the course to force her to relinquish custody and they've been aided and abetted in this by their father. The Court is not swayed by the testimony of the children.

The Court finds that their testimony, while they appear to be bright children, some of the testimony was somewhat embellished and some of the situations that were created just did not make sense to the Court. Even if they happened, it seemed like it was part of the plan developed between the children and the father.

Mr. Eden, it appears, is totally dependent on his brother and sister-in-law. He owns no home or vehicle. He comes before this Court exactly the same way he came the last time. His circumstances have not changed practically in any event.

He owns stock in this corporation of his brother and sister, yet it seems like this corporation is not doing the business that the Court hoped it would within the past three years. Granting Mr. Eden custody of these children would obviously put a financial drain on him but he says that he could bear that if the child support goes on as follows.

The Court feels that the father and the children have conspired to contrive a viable custody suit in this regard; however, they have failed in that regard. The Court finds its to the best interest of these children to remain with their mother.

I'm going to have to fine-tune the final decree because I need some restraining orders. We're going to cut the Wednesday night visitation due to the fact that these children have probably suffered some emotional damage if Mr. Eden doesn't back off.

I'm going to take that visitation away. I'm going to enjoin him from calling the children; however, I'll allow the children to call him in the afternoon when they come home from school and at bedtime. But I'm not going to have it the other way around. There's some discrepancy as to who's calling who.

Mr. Eden will be under a restraining order. He'll be enjoined and

restrained from attempting to alienate the affections of these children from the mother and he's enjoined and restrained from interfering with her custody.

I'm going to extend the summer visits to the month of July and the first two weeks of August. The children will be returned to Ms. Eden two days before the children's school starts. That leaves June for Ms. Eden to go on vacation to visit her friends. During the time that the children are with their father, Ms. Eden will have the middle weekend in July and her weekend in August. If its not Mr. Eden's weekend the children will be returned to Ms. Eden to go to school.

Child support will remain the same throughout except in the fall I'm going to increase this child support to seven hundred dollars per month in addition to the insurance premium because I have made the finding that Mr. Eden is underemployed and I don't think it is to the mother's benefit to work the second job during the week because it takes her time away from her children, even though she needs the money; so he needs to ante-up on that end. The increase will begin in the month of September, 1996.

Mr. Eden's request for adjustment of the support during the six weeks that he has the children is denied. The amount for the support of these three children in not sufficient enough to keep the mortgage paid and the utilities going until the fall when they're not there; when they are visiting their father, so I can't really consider that.

The cost of this cause will be paid by Mr. Eden. Ms. Kevil is awarded a fifteen hundred dollar attorney fee, the balance to be paid to her by her client.

Father presented three issues on appeal. We discuss the following two issues together: 1) "[w]hether the trial court erred in continuing to retain custody of the minor children with the Mother"; and 2) "[w]hether the trial court erred in reducing Father's weekday visitation and restricting telephone calls to the children."

"The doctrine of *res judicata* bars a second suit between the same parties on the same cause of action with respect to all issues which were or could have been brought in the former suit." *Wall v. Wall*, 907 S.W.2d 829, 832 (Tenn. App. 1995). An award of custody is res judicata, absent a finding of a "change in material circumstances affecting the welfare of the children." *Woodard v. Woodard*, 783 S.W.2d 188, 189 (Tenn. App. 1989).

When two people join in conceiving a child, they select that child's natural parents. When they decide to separate and divorce, they give up the privilege of jointly rearing the child, and the divorce court must decide which parent will have primary responsibility for rearing the child. This decision of the Court is not changeable except for "change of circumstances" which is defined as that which requires a change to prevent substantial harm to the child. Custody is not changed for the welfare or pleasure of either parent or to punish either parent, but to preserve the welfare of the child. Custody is not changed because one parent is able to furnish a more commodious or pleasant environment than the other, but where continuation of the adjudicated custody will substantially harm the child.

*Wall,* 907 S.W.2d at 834. Tennessee Code Annotated section 36-6-101(a) provides, in pertinent part, that a custody decree "shall remain within the control of the court and be subject to such change or modification as the exigencies of the case may require." Our Supreme Court has interpreted "exigencies" as follows: "facts and conditions which have emerged since the decree, new facts and changed conditions which were not determined and could not be anticipated by the decree; and that the decree is final and conclusive upon all the facts and conditions which existed and upon which the decree was made." *Smith v. Hasse*, 521 S.W.2d 49, 50 (Tenn. 1975)(quoting *Hicks v. Hicks*, 26 Tenn. App. 641, 176 S.W.2d 371 (1943)).

Mother insists and we agree that the facts complained of by Father could have been and were, to a great extent, anticipated by the final decree. At the time of the divorce hearing, the trial court found that Father was underemployed and that it was necessary to deviate from the child support guidelines. In addition, the court awarded Father the marital residence and ordered him to satisfy Mother's equity interest in the property. The court divided the marital debts equitably between the parties. At the most recent hearing, the court found once again that Father was underemployed and concluded that the child support was inadequate. We think it was reasonable to anticipate that a single mother in Mother's position after the divorce would have to live in an apartment instead of a large home, would have to work outside the home to support herself and the children, and would find it necessary to leave the children at home for some period of time between the time the children arrived home from school and the time Mother arrived home from work. Further, it was reasonable to anticipate Mother would attempt to have some sort of relationship

with her peers including men and women. We also think it was reasonable to anticipate at the time of the divorce the children would want a room of their own with lots of area to play, they would not be content with the modest recreation Mother could provide, and they would long for extras Mother could not afford. It was not, however, reasonable to anticipate that Father would hire a private investigator to follow Mother; would keep a journal on Mother which included his communications with the children concerning court proceedings, depositions, and Mother's activities; would follow Mother to work; and would fax to the general work area of her place of employment harsh and inappropriate letters from the children.

Father contends that we should apply the "comparative fitness" doctrine as set forth in **Bah v. Bah**, 668 S.W.2d 663, 666 (Tenn. App. 1983). We disagree. In a similar case, Judge Susano speaking for the eastern section, stated:

> Father invites us to compare the relative parental fitness of the parties. This is clearly the appropriate analysis on an *initial* custody determination when there are competing applications for custody, *Bah v. Bah*, 668 S.W.2d 663 (Tenn. App. 1983); but in a modification case, this suggestion "puts the cart before the horse." In such a case, we must find a material and substantial change in circumstances as described above *before* we can consider a change of custody. If there has not been a material and substantial change of circumstances as generally described in *Musselman* and *Aaby*, we should go no further.

**Rector v. Rector**, No. 03-A-01-9604-CV-00123, 1996 WL 539767, at *2 (Tenn. App. 25 Sept. 1996). This court has also held that the first step in any change of custody case is to determine whether there has been a "material change in either the parents' or the child's condition." **Maxwell v. Christian**, No. 01-A-01-9209-GS-00364, 1993 WL 194064, at *4 (Tenn. App. 9 June 1993). In the present case, Father failed to establish a material change in circumstances sufficient to warrant a change in custody. Thus, it is the opinion of this court that there is no need to proceed further with the comparative fitness analysis.

Father also relies very heavily on the children's testimonies in his attempt to change custody. "Such testimony 'may be considered' but is not compelling." **Wall,** 907 S.W.2d at 834. The demeanor and credibility of the children were of paramount significance in this case. Great weight should be given to the trier of facts' determination as to credibility.

As in all non-jury cases, a trial court's determination on [change of custody] is reviewed by us *de novo*; however, the record developed below comes to us accompanied by a presumption of correctness that we must honor unless the evidence preponderates against the findings of fact supporting the lower court's judgment. In making our *de novo* review, we "do [] not pass on the credibility of witnesses." "Credibility is an issue for the trial court who saw and heard the witnesses testify and is therefore in the premier position to determine credibility."

*Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn. App. 1995)(quoting *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. App. 1991))(citations omitted).

The evidence presented establishes that the only material change in circumstances which has occurred since the entry of the initial decree and which could not have reasonably been anticipated are those which Father and the children contrived in an effort to fashion a viable custody suit. We agree with the findings of the trial court and find no merit to either of Father's first two issues.

Father's third issue is "[w]hether the trial court erred in deviating from the statute and guidelines in increasing child support."

The trial court found at the original divorce hearing and in the instant proceeding that Father was underemployed. The evidence established that Father owned fifty percent of a cabinet company which had gross profits of $113,377.00 in 1995, but that he elected to be an employee of the company and draw a net monthly income of only $1,500.00. Father's brother and sister-in-law provided Father with a home and Florida vacations, and the company provided his vehicle. Father paid no rent, electricity, car payments, car insurance, or home owner's insurance.

We are of the opinion that given the evidence in this case the trial court correctly found that there were appropriate reasons for deviating from the guidelines. Here, the trial court made written findings as to its reasons for deviating from the guidelines as required by statute. Tenn. Code Ann. § 36-5-101(e)(1996). These included Father's underemployment, the equity between the parties as Mother was having to work a second job, and the best interest of the children. We are of the

opinion that the trial court's determination that Father should pay support in excess of the guidelines is fully supported by the record. This issue is without merit.

We have also considered Mother's motion for finding of a frivolous appeal and find it to be without merit.

It, therefore, results that the judgment is in all matters affirmed, and the cause is remanded to the trial court for any further necessary proceedings. Costs on appeal are taxed to petitioner/appellant, Anthony Lee Eden.

_____
SAMUEL L. LEWIS, JUDGE

CONCUR:

_____
HENRY F. TODD, P.J., M.S.

_____
WILLIAM C. KOCH, JR., J.