# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

FILED

May 10, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

GORDON L. PETERS,  )
          )
    Plaintiff/Appellant,  )    Madison Chancery No. 44493
          )
v.  )
          )    Appeal No. 02A01-9810-CH-00283
SHARON PETERS (MOORE),  )
          )
    Defendant/Appellee.  )

APPEAL FROM THE CHANCERY COURT OF MADISON COUNTY
AT JACKSON, TENNESSEE

THE HONORABLE JOE C. MORRIS, CHANCELLOR

For the Plaintiff/Appellant:        For the Defendant/Appellee:

Kent F. Gearin               Mary Jo Middlebrooks
Martin, Tennessee           Jackson, Tennessee

**REVERSED AND REMANDED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

ALAN E. HIGHERS, J.

**OPINION**

This is a post-divorce child custody case. The father alleges that violence in the mother's home constitutes a material change of circumstance warranting a change of custody. The trial court denied the father's petition to change custody. We reverse.

In 1992, Appellant Gordon Peters ("Father") and Appellee Sharon Peters (Moore) ("Mother") were divorced. The parties have one minor child, Brianna Michelle Peters ("Brianna"), born September 11, 1990. The divorce decree awarded Mother custody of Brianna and provided Father with reasonable visitation. Mother lives in Hollow Rock, Tennessee; Father lives in Franklin, Tennessee. On April 8, 1997, Father filed a petition to change custody, alleging a material change of circumstance warranting a change of custody.

The pertinent facts are essentially undisputed. Prior to the marriage of the parties in this case, Mother had been married three times. Prior to the parties' marriage, Mother had two daughters with her third husband, Philip Hickerson. Mother had custody of these two daughters. Since the parties' divorce in 1992, Mother has been married three times. On December 27, 1993, Mother married William Mount ("Mount"), her fifth marriage. Mother encountered physical and emotional abuse during the marriage. In January 1994, Mount kicked Mother in the chest causing her to fall down a flight of stairs. The police responded to the incident and Mount was arrested.

Subsequently, Mother agreed to reconcile with Mount on the condition that he enter a treatment program for alcoholism. Several months later, Mount, while intoxicated, broke into the trailer at night with a crowbar and assaulted Mother. Mother sustained bruises on her face, arms, and legs. On August 24, 1994, Mother filed for divorce from Mount. In addition, Mother filed a petition for a restraining order against Mount alleging that he was an alcoholic and that he verbally and physically abused her. Subsequently, Mother dropped the divorce complaint and attempted to reconcile with Mount. In February 1996, after Mother filed another divorce complaint, Mount again broke into her trailer by bursting through the door. Mount physically attacked Mother, and she sustained multiple visible bruises and a cut lip. Brianna was in Mother's home during all three incidents. Mother and Mount divorced in June 1996.

As a result of the violence in Mother's home, her third husband, Philip Hickerson, sought custody of their two daughters, Brianna's older half-sisters. In the course of the proceedings on Hickerson's petition to change custody, Mother was evaluated by a clinical psychologist, Dr. David Pickering, who administered the Minnesota Multiphasic Personality Inventory test to Mother and

testified that the test indicated that Mother was "rebellious," "self-centered," "impulsive" and had difficulty with jealousy and temper control. In August 1996, Hickerson was awarded custody of their two daughters.

In October 1996, Mother married Anthony Smith ("Smith") who was in an alcohol rehabilitation program at the time the parties began dating. Smith testified to one incident of violence in which he grabbed Mother and slammed her against a wall. Smith filed for divorce and, after nine months of marriage, the parties were divorced on July 15, 1997.

In February 1997, Mother began dating Michael Moore ("Moore"). This relationship also proved to be violent. In October 1997, Moore, while intoxicated, attacked Mother and began strangling her. In self-defense, Mother grabbed a knife and stabbed Moore in the arm and back. Both parties were charged with aggravated assault and received deferred probation. Despite this incident of violence, Mother married Moore in December 1997. As of trial, the parties remain married. Moore testified that their household is a "normal" household and assured the trial court that there would be no more violent incidents.

Apparently as a result of the multiple marriages and violent relationships, Mother and Brianna have moved six times since 1992. From September 1992 through the summer of 1995, Mother provided babysitting services in her home for several children. Since then, Mother's employment has been sporadic. In 1996, Mother obtained a LPN degree in nursing but has been unable to pass the state board exam. In February 1997, Mother worked as a waitress on an as-needed basis. At the time of trial, Mother worked four days a month at a center for mentally handicapped adults.

Since the parties' divorce in 1992, Father has lived in Franklin, Tennessee. Father has been employed as a national sales manager with Murray, Inc. for thirteen years. His annual salary is approximately $65,000 a year. Father remarried in November 1997, after dating his current wife for five years. Father acknowledged that he and his current wife lived together for one and a half years prior to their marriage. Father exercises regular visitation with Brianna.

Prior to the trial in this cause, Brianna was examined by Dr. David Clein, a psychiatrist from Memphis Psychiatric Group. Dr. Clein found in part:

> Brianna Peters is a medically healthy, 7-year-old girl who appears to be functioning fairly well psychiatrically, even in her current environmental context, which is less than ideal . . . [T]here are no symptoms or behaviors present suggesting

2

a mood disturbance. There are also no symptoms present indicating any other childhood psychiatric disorder, including developmental disorders, anxiety disorder, disruptive behavior disorders, or abuse. She does very well in school and appears to be socially well adjusted.

Although Brianna does not currently exhibit any symptoms consistent with a psychiatric disorder, it would be remiss not to comment on the fact that she is clearly at risk for developing such a disorder. Her current environment appears to be potentially unstable, unpredictable, and possibly violent. In addition, the frequent changes in households along with the negative, derogatory comments made by both parents about each other (particularly by the mother) are potentially damaging to this developing child. Indeed, her current lack of psychiatric pathology is a tribute to her psychological resilience rather than her being in an ideal environmental setting. (emphasis in original)

In addition, Brianna was examined by Joanne Zambo ("Zambo"), a licensed clinical social worker in Huntingdon, Tennessee, upon Mother's request, to evaluate Brianna's feelings about the possibility of a change of custody. Zambo met with both Mother and Brianna for approximately thirty minutes and met with Brianna on two separate occasions for approximately ninety minutes. Zambo testified that she assessed the current situation, and that her evaluation did not involve a detailed history of either Mother or Brianna. Zambo further testified that Brianna loves both of her parents and reported being happy in both households. Zambo testified that Brianna preferred to remain with her mother.

After hearing all of the evidence, the trial court made the following findings of fact:

The court . . . finds that the Mother, Sharon Peters Moore, has been married three (3) times since her divorce from Mr. Peters and has been subjected to mental and physical abuse by all of these husbands. However, since she and Mr. Moore have married, they have gotten along very well even though they are both on probation due to his physical abuse prior to their marriage. The Court can only say that the Mother committed some serious judgmental errors since her divorce from Mr. Peters which could be defined as a material change of circumstances that would warrant the Court in reviewing this case and outlining the comparative fitness doctrine.

Mr. Peters has married and has a nice home with a good school available in a desirable neighborhood in Franklin, Tennessee. His marriage appears stable. He did live with his present wife for one and a half years before they were married and apparently was involved with her in some way before his divorce from Mrs. Moore.

Mrs. Moore has had two (2) turbulent marriages and was the victim of violence by her present spouse, Michael Moore. She has moved five (5) times with the child since 1992. The children of a prior marriage were removed from her custody due to the circumstances surrounding one of her marriages since she and Mr. Peters were divorced. She is now married to Michael Moore and they appear to be doing very well. Mr. Moore testified that he loves the minor child of the parties, and that they have a good relationship.

Brianna Michelle Peters, the minor daughter of the parties, is now age eight (8) and is doing very well in school. She has been in the full custody and control of her Mother since the separation of the parties, and Mr. Peters has visited on a regular basis. The child is an Honor Roll student. She has been examined by a psychiatrist and a Licensed Clinical Social Worker and both find that she has no psychiatric problems and appears to be normal in every respect.

Under those circumstances, the Court is not willing to remove the child from

3

the custody of a dutiful and loving mother, away from her friends and family into an environment to which she is only vaguely familiar . . . .

Therefore, the trial court denied Father's petition to change custody. From this order, Father now appeals.

In child custody cases, appellate review is *de novo* upon the record, with a presumption of the correctness of the trial court of the trial court's factual findings. Tenn. R. App. P. 13(d); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984); *Dalton v. Dalton*, 858 S.W.2d 324, 327 (Tenn. App. 1993). No such presumption attaches to the trial court's conclusions of law. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

Under the doctrine of res judicata, a second suit on the same cause of action between the same parties is barred with respect to all issues which were or could have been litigated in the first lawsuit. *Wall v. Wall*, 907 S.W.2d 829, 832 (Tenn. Ct. App. 1995). Therefore, an order awarding custody cannot be changed in the absence of a showing of new facts or "changed circumstances" justifying an alteration of the original custody award. *Musselman v. Acuff*, 826 S.W.2d 920, 924 (Tenn. Ct. App. 1991); *see also* Tenn. Code Ann. § 36-6-101(a)(1) (Supp. 1998) (providing that the trial court retains jurisdiction over custody orders subject to such changes or modification as "exigencies" of a case may require). On a petition to change custody, the trial court does not simply repeat the comparative fitness analysis done at the time of the original decree; the trial court must first find a material change of circumstances "compelling enough to warrant a change in custody." *Williams v. Williams*, No. 01A01-9610-CV-00468, 1997 WL 272458, at *7 (Tenn. Ct. App. May 23, 1997); *Short v. Short*, No. 03A01-9506-CH-00168, 1995 WL 728521, at *2 (Tenn. Ct. App. Dec. 11, 1995); *see also Wall*, 907 S.W.2d at 834; *Woodard v. Woodard*, 783 S.W.2d 188, 190 (Tenn. Ct. App. 1989). In order for a change of circumstances to warrant a change of custody, the change must be necessary to prevent substantial harm to the child. *Wall*, 907 S.W.2d at 834. The type of behavior required by the custodial parent which would precipitate a change of custody must be that "which clearly posits or causes danger to the mental or emotional well-being of a child (whether such behavior is immoral or not) . . . ." *Musselman*, 826 S.W.2d at 924 (quoting *Ballard v. Ballard*, 434 So. 2d 1357, 1360 (Miss. 1983)). The analysis in change-of-custody cases was summarized by this Court in *Williams:*

> In sum, then, in determining whether to change custody, the noncustodial parent has the burden of proving a material change in circumstances, that is, behavior by the

custodial parent which clearly endangers the well-being of the child. Only after it is determined that such a material change in circumstances has occurred does the trial court perform a comparative fitness analysis to determine if custody should be changed.

*Williams*, 1997 WL 272458, at *7.

Evidence of domestic violence in the home may support a change of custody. *See Newport v. Newport*, No. 03A01-9712-JV-00543, 1998 WL 820765, at *1-2 (Tenn. Ct. App. Nov. 24, 1998) (affirming change of custody based in part where evidence revealed violence in the home); *Smith v. Smith*, No. 03A01-9508-CH-00292, 1996 WL 33177, at *2 (Tenn. Ct. App. Jan. 30, 1996) (affirming change of custody where evidence showed lack of supervision and violence in mother's home); *Gogus v. Tritschler*, No. 01-A-01-9508-CH-00373, 1996 WL 23366, at *4 (Tenn. Ct. App. Jan. 24, 1996) (affirming change of custody based in part on fact that mother's present husband physically abused her in the home); *Dennis v. Dennis*, No. 3, 1990 WL 207392 (Tenn. Ct. App. Dec. 19, 1990) (affirming change of custody where mother was victim of assault by present husband, mother admitted that husband had violent temper, and parties had history of reconciliation and separation).

In this case, the trial court apparently found a sufficient change in circumstance to trigger an inquiry into the best interest of the child and the ensuing comparative fitness analysis.[1] However, after comparing the parties' respective circumstances and considering the child's frame of mind and the importance of continuity, the trial court concluded that it was in Brianna's best interest to deny Father's petition to change custody.

Indeed, the record in this case indicates "ample evidence of a material change of circumstances sufficient to trigger an inquiry into the best interest of the children." *Bjork v. Bjork*, No. 01A01-9702-CV-00087, 1997 WL 653917, at *4 (Tenn. Ct. App. Oct. 22, 1997). Since the parties' divorce in 1992, Brianna has lived in an environment which can only be described as turbulent. Since 1992, Mother has been married three times and has moved six times. Two of these marriages involved substance abuse and several incidents of violence in the home that resulted in injuries to Mother. Brianna and her half-sisters were in the home during some of these violent incidents; Brianna witnessed at least one. Mother lost custody of Brianna's older half-sisters as a

---

[1]The trial court stated that Mother's "serious judgmental errors" since the divorce decree "could be defined as a material change of circumstances that would warrant the Court in reviewing this case and outlining the comparative fitness doctrine."

result. Mother's current husband, Michael Moore, was involved in the most recent violent incident in which Mother stabbed Moore in self-defense. The psychiatrist who examined Brianna found no symptoms of psychiatric disorder, but noted that she is "at risk" for such disorder because her environment was "potentially unstable, unpredictable, and possibly violent" and because of the frequent moves and derogatory comments by her parents about each other. He concluded that Brianna's absence of psychiatric disorder was "a tribute to her psychological resilience rather than her being in an ideal environmental setting." In this case there has been a material change in the circumstances of the custodial parent "which clearly posits or causes danger to [Brianna's] mental or emotional well-being . . . ." *Musselman*, 826 S.W.2d at 924 (quoting *Ballard v. Ballard*, 434 So. 2d 1357, 1360 (Miss. 1983)).

Citing *Musselman v. Acuff*, Father argues that a finding of a material change of circumstances based solely upon the child's exposure to domestic violence should dictate a change of custody. However, *Musselman* indicates only that the threshold test for change of custody is whether the change of circumstances is sufficiently compelling to warrant a change of custody. *Musselman*, 826 S.W.2d at 921. *Musselman* noted that the best interests of the child is the "paramount consideration" in any custody proceeding. *Id.* at 921. Any change of custody determination must be guided by the best interests of the child. *Bjork*, 1997 WL 653917, at *3 (Tenn. Ct. App. Oct. 22, 1997); *see also Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983); *Maxwell v. Christian*, No. 01A01-9209-GS-00364, 1993 WL 194064, at *3 (Tenn. Ct. App. June 9, 1993). Exposure to domestic violence can be "sufficient to trigger an inquiry into the best interest of the children." *Bjork*, 1997 WL 653917, at *3. However the Court cannot risk putting a child "from the frying pan into the fire" and placing the child into a situation as bad or worse than the situation which gave rise to the petition for a change of custody. Consequently, once it is determined that a material change of circumstances has occurred, even if it involves domestic violence, the Court must compare the fitness of the two parents to determine if a change of custody is in the child's best interest. *See Adelsperger v. Adelsperger*, 970 S.W.2d 482, 485 (Tenn. Ct. App. 1997); *Williams*, 1997 WL 272458, at *8. *See* Tenn. Code Ann. § 36-6-106 (Supp. 1998).

Tennessee Code Annotated § 36-6-106 sets forth some of the factors to be considered in performing a comparative fitness analysis. These factors include:

(1) The love, affection and emotional ties existing between the parents and

6

child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . .

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;

(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106 (Supp. 1998). The record in this case indicates that Brianna loves both her parents and feels happy in each household. Despite the turbulence in her life, Mother has provided Brianna with a suitable home, education and the necessities. Father has consistently paid child support, provides a suitable home for Brianna in Franklin, Tennessee, and has exercised regular visitation with her.

It is undisputed in this case that Mother has been Brianna's primary caregiver all her life. This is an important factor that dovetails with the next statutory factor, continuity in the child's life. This Court has repeatedly emphasized that continuation of the child's successful relationship with the primary caregiver normally provides stability that outweighs possible advantages that might result from a custodial change. *See Williams*, 1997 WL 272458, at \*7; ***Contreras v. Ward***, 831 S.W.2d 288, 290 (Tenn. Ct. App. 1991) (quoting ***Sartoph v. Sartoph***, 354 A.2d 467, 473 (Md. 1976)). Indeed, the trial court in this case emphasized the continuity of Brianna's relationship with Mother as primary caregiver.

However, Mother's role as primary caregiver has been virtually the only constant in

7

Brianna's life. The turbulent and sometimes violent atmosphere in Mother's home, regardless of whether Brianna actually witnessed the violence, is deeply disturbing. Since the parties' divorce, Mother has been married three times, has moved six times and her employment has been sporadic. Custody of Brianna's two half-sisters was changed to their father. It is clear that Brianna has not lived in a "stable, satisfactory environment."

In contrast, the proof indicates Father provides a stable environment for Brianna. Father has remarried, and has worked with the same company for over thirteen years. Father has consistently paid child support, and has regularly exercised visitation with Brianna. Father enrolled Brianna in horse-back riding lessons in which she participates on the weekends on which she visits him. Father has assessed the schools in his community in preparation for the possibility of a change of custody.

The record indicates that Brianna has done well in school and remains free of psychiatric disorder, and this mitigates in Mother's favor. However, it is clear that this must be attributed at least in part to Brianna's "psychological resilience" in the midst of an unstable environment.

The statute also includes as a factor "the character and behavior of any person who resides in . . . the home of a parent . . . ." *See* Tenn. Code Ann. § 36-6-106(9) (Supp. 1998). The record indicates that Father cohabited with his current spouse prior to marriage. Mother's current husband, Michael Moore, indicated that he has a good relationship with Brianna and assured the trial court that the earlier stabbing incident with Mother was an "accident" that would not happen again. Nevertheless, the history of violence must be considered. Although there is tension between the parties over Father's alleged involvement with his current wife Fran prior to the parties' divorce, it is undisputed that Father and Fran have a stable relationship and that she has an appropriate and affectionate relationship with Brianna.

The statute also includes "the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. . . ." In this case, both parents apparently have made some derogatory remarks about the other, particularly Mother. However, the record does not indicate any substantial attempt by either to undermine Brianna's relationship with the other parent.

Considering the record as a whole, we must reverse the trial court's decision to deny Father's petition to change custody. We do not disregard the importance of Mother's role as Brianna's primary caregiver. Moreover, a change of custody is made more difficult by the fact that Mother and

8

Father live some distance apart.  However, it is clear that, in Mother's care, Brianna has lived in an unpredictable and sometimes violent environment, and that this cannot continue.  The decision of the trial court is reversed.

The cause is remanded to the trial court for further proceedings implementing the change of custody, fashioning an appropriate visitation schedule, considering the issue of child support, and for any other matters consistent with this Opinion.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion.  Costs are assessed against the Appellee, for which execution may issue if necessary.

_____HOLLY KIRBY LILLARD, J.

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**ALAN E. HIGHERS, J.**

9