IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 10, 2002 Session

## TRACY RENEE MORRIS v. ROBERT ANDREW MORRIS

**An Appeal from the Circuit Court for Davidson County**
**No. 97D-3134      Muriel Robinson, Judge**

---

**No. M2001-02275-COA-R3-CV - Filed September 17, 2002**

---

This case involves a petition to change custody. The parents were divorced in July 1998. By agreement, custody of the parties' two minor children was awarded to the mother. In February 2001, while the children were staying with the father at the mother's request, he filed a petition to modify custody to make him the permanent custodial parent. In his petition, the father alleged a material change in circumstances, in that the mother had difficulty keeping a job, maintaining a home, and taking care of the children. The trial court granted the father's petition. The mother now appeals. We affirm, finding that the trial court did not err in finding a material change in circumstances and did not abuse its discretion in changing custody to the father.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed**

HOLLY KIRBY LILLARD, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

David A. Collins, Nashville, Tennessee, for the appellant, Tracy Renee Morris.

Rosemary E. Phillips, Goodlettsville, Tennessee, for the appellee, Robert Andrew Morris.

**OPINION**

Plaintiff/Appellee Robert Andrew Morris ("Father") and Defendant/Appellant Tracy Renee Morris ("Mother") were divorced in July 1998 after five years of marriage. At the time of the divorce, by consent of the parties, Mother was awarded custody of their two children, Austin Chase Morris, born October 12, 1994, and Ashleigh Jade Morris, born July 8, 1996. Soon after the divorce was final, Mother and the children moved from Nashville to Louisiana. In October 1998, Mother

asked Father to come to Louisiana to get the children and take them back with him to Nashville.[1] When he returned to Nashville with the children, Father enrolled them in a private school. In February 1999, Mother moved back to Nashville, and the children then resumed living with her. During the time in which the children lived with Father, he continued to pay child support, school tuition, and other expenses of both Mother and the children.

In the time period from July 1998 to August 2001, the date of the hearing below, Mother held seven jobs. In January 2001, Mother began a five-week training period at a nearby hospital to become a patient care technician. She again asked Father to let Austin and Ashleigh to live with him during this training period. Father agreed and took temporary custody of the children. On January 31, 2001, during the time in which Austin and Ashleigh were living with Father, Mother's apartment lease was scheduled to expire. On January 29, 2001, Mother signed a lease with another apartment complex and arranged to move in during the latter part of February 2001. During the interim period, Mother lived with a friend. The children continued to live with Father.

On February 9, 2001, while Austin and Ashleigh were in Father's custody and Mother was living with her friend, Father filed a petition for change of custody and sought a temporary restraining order against Mother to enjoin her from removing the children from his possession. In his petition, Father alleged that Mother "lost her apartment and has no place to live, has stored her things, and is currently living with friends." Father asserted that Mother had held seven jobs from the time of their divorce until her January 2001 enrollment in the patient technician class. Father claimed that Mother had brought Austin and Ashleigh to school late thirteen times while they were in her custody, that the children were not prepared at school, and that they were not getting enough sleep or food. For those reasons, Father asked the trial court to change custody of the children and make him the primary custodian. On February 12, 2001, the trial court granted Father's request for a temporary restraining order against Mother pending further orders from the court. Mother filed an answer to the petition, and on March 30, 2001, filed a motion to dissolve the restraining order. On April 19, 2001, the trial court denied Mother's motion to dissolve.

A hearing on Father's petition for change of custody was held on August 20, 2001. On December 20, 2001, the trial court entered an order granting Father's petition. The court reasoned:

> Neither party is unfit to have custody of the minor children. The Court does find, however, that the criteria is which parent is the more appropriate. The Court finds that the Father is the more appropriate parent. The children did not thrive with the Mother. The Mother cannot handle the children. She does not get them to school on time. She does not get them there with the things they need or with their breakfast. It is in the children's best interest to be placed in the custody of their Father.

---

[1] The record is unclear as to the circumstances surrounding Mother's request for Father to go retrieve Austin and Ashleigh from Louisiana. Mother's appellate brief, however, states that she and her own adoptive mother "were embroiled in a personal conflict that neither thought the children should be exposed to."

On that basis, the trial court granted the Father's petition, naming him primary custodian and granting Mother visitation. From this order, Mother now appeals.

We review the trial court's decision de novo upon the record, and the trial court's findings of fact will be presumed correct unless the preponderance of the evidence is otherwise. *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). The trial court's conclusions of law are afforded no such presumption. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997). The trial court has broad discretion in deciding child custody issues, because such "decisions are factually driven and require the careful consideration of numerous factors." *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983); *see also Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). The trial judge has the opportunity to observe the demeanor of the witnesses and to make credibility determinations. *Bah*, 668 S.W.2d at 666. The trial court's custody determination is reversed only upon a showing that the trial court has abused its discretion. *See Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988); *Gaskill v. Gaskill*, 936 S.W.2d 82, 85 (Tenn. Ct. App. 1996).

Under Tennessee law, the original decree of custody "may not be modified unless a material change of circumstances has occurred such that the child's welfare requires a modification of the custody decree." *Bunker v. Finks*, No. E2001-01496-R3-CV, 2002 Tenn. App. LEXIS 336, at *20 (Tenn. Ct. App. May 8, 2002) (citing *Hoalcraft v. Smithson*, 19 S.W.2d 822, 828 (Tenn. Ct. App. 1999)). A material change in circumstances is any change "affecting the welfare of the child including new facts or changed conditions which could not be anticipated by the former decree."[2] *Roach v. Bourisaw*, No. M2000-02651-COA-R3-CV, 2001 Tenn. App. LEXIS 756, at *14 (Tenn. Ct. App. Oct. 10, 2001) (citing *Dalton v. Dalton*, 858 S.W.2d 324, 326 (Tenn. Ct. App. 1993)). The change must be in the *child's* circumstances, not the parents' circumstances, and it "must affect the child's well-being in a material way." *Hoalcraft*, 19 S.W.3d at 829 (citing *Dailey v. Dailey*, 635 S.W.2d 391, 393 (Tenn. Ct. App. 1981)) (emphasis added). "If the trial court finds that there has been a material change in circumstances, it will then consider the petition to modify using the best interests standard." *Hoalcraft*, 19 S.W.3d at 828. The children's best interest "is the polestar, the *alpha and omega*." *Bah*, 668 S.W.2d at 666 (emphasis in original). Weighing the best interests of the child involves consideration of several factors, including those enumerated in Tennessee Code Annotated § 36-6-106.[3] *See Hoalcraft*, 19 S.W.2d at 829. The trial court must recognize a "strong

---

[2] Mother does not allege that the factors relied on by Father were those that could have been anticipated at the time of the original custody award. *See Hoalcraft*, 19 S.W.3d at 828 (finding that a material change in circumstances includes conditions that could not be anticipated at the time of the original order).

[3] That statute provides that custody determinations must be based on the best interest of the child and should take into account the following factors:

(1) The love, affection and emotional ties existing between the parents and the child;

(2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;

(continued...)

presumption in favor of continuity of placement." *Id.* (quoting *Placencia v. Placencia*, 3 S.W.3d 497 497, 503 (Tenn. Ct. App. 1999)).

In this appeal, Mother argues that Father's proof did not demonstrate a change in circumstance sufficient to warrant a change in custody. She argues that the allegations of changed circumstances in this case are not as severe as in those cases in which a change of custody has been found to be appropriate. Rather, Mother likens this case to *Woodard v. Woodard*, 783 S.W.2d 188 (Tenn. Ct. App. 1989). In *Woodard*, the parties agreed at the time of their divorce to joint custody of their minor children. *Woodard*, 783 S.W.2d at 189. Later, the father sought to modify the agreed-upon custody arrangement by filing a "petition to reform contract", because he had become dissatisfied with the way the original decree was being applied by the parties. The trial court granted his petition, but made no finding that a change in circumstances had occurred. *Id.* The trial court's decision to modify was reversed on appeal, because the father had not shown that a material change in circumstances existed or that the best interests of the children would be served by making the proposed change in custody. *Id.* at 190.

However, *Woodard* is clearly distinguishable. In *Woodard*, the father did not even allege that a change in circumstances had occurred. In the instant case, Father submitted the testimony of two of the children's teachers. Austin's teacher testified that he was more prepared and had the things he needed for school when he was living with Father. She stated that when he was living with Father, Austin was "a lot more settled" and was better able to focus on his work. She noted that

---

[3](...continued)
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . . ;

(4) The stability of the family unit of the parents;

(5) The mental and physical health of the parents;

(6) The home, school and community record of the child;

(7) The reasonable preference of the child if twelve (12) years of age or older. . . .;

(8) Evidence of physical or emotional abuse to the child, to the parent or to any other person . . . ;

(9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and

(10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1) - (a)(10).

Father attended school parties and corresponded with the teacher regarding Austin's status at school. Ashleigh's day care director similarly testified that, while Ashleigh lived with Mother, she at times arrived at day care without having had breakfast. The day care director recalled an instance in which Mother had dropped off Ashleigh in the parking lot without making certain that she got to her classroom. The director asserted that Ashleigh "seems much more adjusted" and "is much more alert and happy" when living with Father.

Mother testified at trial regarding Father's allegations. She admitted that Father had at all times since the divorce voluntarily paid for her car insurance until February 2001, and that he had paid other bills on her behalf when she needed help. She acknowledged that she had held seven jobs since her return to Tennessee in 1999. She explained that she had brought the children late to school numerous times because "they're kids. They want to stay in bed. They run around the apartment. They want to watch cartoons. They sit there slowly and eat their breakfast. They want to play. . . . I'm sure we've probably overslept." When asked why on two occasions the children arrived at school out of uniform, Mother responded that she was not told by Father or the school that the days in question were uniform days.

After hearing the proof, the trial court found that, after the divorce, the children did not thrive with Mother as they did with Father. The court stated that "[t]he Mother cannot handle the children. She does not get them to school on time. She does not get them there with the things they need or with their breakfast." The trial court concluded that it was "in the best interest of these children that they remain with [Father], evidenced by the fact that [Mother] can't handle the children. It's very important to get those children to school on time. She's made some bad decisions, they're not horrible decisions, but they're not appropriate decisions that a parent would make."

From our review of the record, we find that the evidence does not preponderate against the trial court's finding of a material change in circumstances sufficient to warrant changing custody of the children from Mother to Father. In addition, the evidence does not preponderate against the trial court's finding that having Father as the children's primary custodian is in their best interest. Overall, we cannot conclude that the trial court abused its discretion in granting Father's petition. Accordingly, we affirm the decision of the trial court. This holding pretermits the other issues raised in this appeal.[4]

---

[4]Mother also argues that the trial court abused its discretion in failing to grant a timely hearing on the temporary restraining order. The restraining order was issued in February 2001, and the hearing on the propriety of that order did not take place until seven months later at the hearing on the underlying merits of the case. Because the outcome of the underlying case was resolved in favor of Father, the failure to grant an earlier hearing on the propriety of the restraining order was harmless. A trial court, however, should take care not to delay a parent's challenge to a temporary restraining order, particularly when the order breaks the continuity of a child's placement.

The decision of the trial court is affirmed. Costs are to be taxed to appellant, Tracy Renee Morris, and her surety, for which execution may issue, if necessary.

                                      _____

                                      HOLLY KIRBY LILLARD, JUDGE