IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

August 24, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| THOMAS MICHAEL HALE, III, | ) C/A NO. 03A01-9809-PB-00284 |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| | ) |
| | ) |
| | ) APPEAL AS OF RIGHT FROM THE |
| v. | ) CUMBERLAND COUNTY PROBATE |
| | ) AND FAMILY COURT |
| | ) |
| | ) |
| | ) |
| | ) |
| TAMMY RENEE HALE, | ) |
| | ) HONORABLE JAMES A. BEAN |
| Defendant-Appellant.) | JUDGE |


For Appellant                    For Appellee

MICHAEL W. BINKLEY             CRAIG P. FICKLING
Nashville, Tennessee          Ronald Thurman & Associates
(Appeal Only)                 Cookeville, Tennessee


O P I N I O N


AFFIRMED AND REMANDED                     Susano, J.

This is a divorce case. The trial court granted Thomas Michael Hale, III ("Father") a divorce by judgment entered January 24, 1997. At the time of the divorce, the defendant, Tammy Renee Hale ("Mother"),[1] was pregnant. For this reason, the issues of the unborn child's custody and related matters were reserved in the divorce judgment "by the parties['] mutual agreement." On April 18, 1997, Mother gave birth to Vadah Marie Hale ("Vadah"). Following a hearing on July 13, 1998, the trial court awarded Father sole custody of Vadah with specified visitation rights being awarded to Mother. She appeals, urging one issue, involving two concepts, that she states as follows:

> Whether the record preponderates against the trial court's factual finding that the father is more stable than the mother (and hence a comparatively better-fit custodian for the infant daughter) and whether the trial judge abused his discretion in awarding custody to the father based upon all relevant factors.

I. *General Factual Overview*

The parties met in Nashville in 1993. Mother had moved there[2] in 1987 following her graduation from high school in Rome, Georgia. Father was also living in Nashville, but was originally from Crossville. He lived in Nashville for three years, before moving back to Crossville following the parties' marriage in October, 1995.

---

[1]In the divorce judgment, Mother was restored to her maiden name of Kemp.

[2]Mother was born in Nashville. Her family subsequently moved to Rome, Georgia. She has many relatives in the Nashville area.

2

The parties experienced problems in their marriage and originally separated at a time not clearly identified in the record.[3]  While the parties were separated, Father learned, in July, 1996, that Mother was pregnant.  The parties resumed cohabitation, apparently in Crossville, for two weeks, after which Mother once again removed herself from the marital residence and returned to Nashville.  She was there for six or seven months.  The parties were divorced on January 20, 1997.

Two weeks after the divorce, the parties got back together in Crossville.  Mother was still pregnant.  According to Father, the parties remained together this last time "until three or four months after the baby was born."

Mother and Vadah moved to an apartment on Old Hickory Boulevard in Nashville in October, 1997.  In June, 1998, approximately a month before the final custody hearing on July 13, 1998, Mother and Vadah moved in with Mother's parents in Rome.  Her father operates a Lee Fried Chicken franchise.  She testified that she had worked a few days a week at the restaurant since returning to Rome.

Father -- Thomas Michael Hale, III -- had moved to Huntsville, Alabama, from Crossville two weeks before the most recent hearing below.  He moved there to work for his brother-in-law.  He testified that he "book[ed] golf vacations into Crossville and Huntsville."  He further testified that prior to making the move to Huntsville, he had traveled back and forth

---

[3]As can be seen from the dates that are known, the parties lived together as husband and wife for less than a year.

3

between Crossville and Huntsville for four or five months in connection with his new job. He lives with his sister, his employer/brother-in-law, and their daughter in a three-bedroom house near Huntsville. Prior to leaving Crossville, Father had worked at a golf course there.

## II. *Applicable Law*

Our review of this non-jury case is *de novo* upon the record of the proceedings below; however, that record comes to us with a presumption that the trial judge's factual findings are correct. Rule 13(d), T.R.A.P. We must honor this presumption unless we find that the evidence preponderates against those findings. *Id.*; *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984).

Our *de novo* review is subject to the well-established principle that the trial judge is in the best position to assess the credibility of the witnesses; accordingly, such credibility determinations are entitled to great weight on appeal. *Massengale v. Massengale*, 915 S.W.2d 818, 819 (Tenn.App. 1995); *Bowman v. Bowman*, 836 S.W.2d 563, 566 (Tenn.App. 1991).

A trial court has broad discretion regarding a custody determination.[4] *Brumit v. Brumit*, 948 S.W.2d 739, 740 (Tenn.App. 1997); *Marmino v. Marmino*, 238 S.W.2d 105, 107 (Tenn.App. 1950);

---

[4]Mother attempts to argue that this is a modification case rather than an original award of custody, citing an alleged oral understanding between the parties -- not memorialized in a signed writing -- that Mother would have sole custody. We disagree. The judgment now before us on this appeal is the original final award of custody in the divorce suit.

4

*Varley v. Varley*, 934 S.W.2d 659, 665 (Tenn.App. 1996). We will not disturb such a determination unless the record reflects an "erroneous exercise of that discretion." *Mimms v. Mimms*, 780 S.W.2d 739, 744-45 (Tenn.App. 1989).

"Absent some compelling reason otherwise, considerable weight must be given to the judgment of a trial court in a divorce proceeding in respect to the credibility of the parties and their suitability as custodians." *Id*. at 744.

There are "[n]o hard and fast rules...for determining which custody and visitation arrangement will best serve a child's needs." *Gaskill v. Gaskill*, 936 S.W.2d 626, 630 (Tenn.App. 1996). A custody determination is "factually driven" and "requires the courts to carefully weigh numerous considerations." *Id*. The overriding consideration is the best interest of the child. *Id*. *See* T.C.A. § 36-6-106 (Supp. 1998). As we said in *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn.App. 1983), "neither trial nor appellate judges have any responsibility greater than to attempt to correctly adjudicate child custody disputes." *Id*.

### III. *Trial Court's Judgment*

The trial court stated that it had considered the factors set forth in T.C.A. § 36-6-106. Having done so, the court concluded that Father should be awarded sole custody of Vadah. It stated the following in its memorandum opinion from the bench:

5

We have a young female child here; and as
both attorneys know--but for the benefit of
those people who are here--of course, T.C.A.
36-6-106 certainly sets out what the Court is
to consider in making a determination with
regard to where custody of a child or
children should go; and the Court is well
aware of that; and I take that into
consideration in making this decision.

I'm of the opinion that, after taking
everything into consideration, that the
person who is the best parent, the best
person to have custody of this child is the
father. I think, after considering
everything, he's not perfect; neither is the
mother; but I think he has stability.

One thing that really impressed me about him
was the fact that--I assume he's about
twenty-nine. That was the age of Ms. Haile
[sic], somewhere in there. I don't know to
that effect. What really impressed me is
that this father has been visiting with this
child every weekend. Most young people that
I know of, particularly fathers, are not that
responsible. They'd rather be out partying
or going on a date; but here, he takes care
of his daughter--that has not been
controverted--on the weekends and has been
doing so for quite some time. There was
further testimony that he not only feeds the
child, he cares for the child, he plays with
the child, he bathes the child. And that's
not to take away from the mother. I'm sure
the mother does that. But he impresses me as
being the most stable of the parties at this
time.

And keep in mind that custody of a child or
children is never permanent. At any time
there's a showing that there's a change in
circumstances that would warrant changing
custody, if it can be shown it would be in
the best interest of the child or children,
then the action can be brought back before
the Court.

In the trial court's judgment entered July 30, 1998 --
following the hearing on July 13, 1998 -- the court said as
follows:

6

> After having conducted a comparative fitness
> analysis of the parties, taking into
> consideration the criteria set out in T.C.A.
> § 36-6-106 and other relevant factors
> including the demeanor of the parties and
> their witnesses, the Court finds that the
> defendant, **Thomas Michael Hale, III,** is more
> comparatively fit to have custody of the
> parties' minor child, namely, **Vadah Marie
> Hale.** Specifically, the Court finds that it
> is in the best interest of the parties' minor
> child that the defendant be vested with
> custody.

(Bold print in original).

IV. *Analysis*

A.

While expressing that it had considered all of the factors set forth in T.C.A. § 36-6-106, the trial court focused its primary attention on "[t]he stability of the family unit of the parents." T.C.A. § 36-6-106(4). The trial court concluded that Father's present situation was, relatively speaking, more stable than that of Mother's. Mother disagrees with this assessment; she strenuously argues that she has the more stable environment, one that is bolstered by a support network in Rome, including Vadah's maternal grandmother -- a person that everyone agrees is capable of caring for Vadah in the absence of Mother.

The evidence does not preponderate against the trial court's determination that Father is the more stable of the two parents. Father is employed in Huntsville at a full-time job. After commuting between Crossville and Huntsville for three or four months, Father made a determination that employment with his

7

brother-in-law was a good career move for him.  This prompted him to move his residence to Huntsville.  There is no showing that his sister's house is an inappropriate place to raise Vadah.  It is true that the house only has three bedrooms to accommodate his sister, her husband, their child -- a female, six years old -- and Father and Vadah; but there is no proof in the record that Vadah's living accommodations there are in any way harmful to her.

While Mother's accommodations in Rome are likewise suitable for Vadah, there is another factor that comes into play in evaluating the stability of Mother's circumstances, *i.e.*, Mother's Nashville connection.

Mother admitted that she had four residences -- three in Nashville and the present one in Rome -- in a period of a year and a half.  Since January, 1997, she had lived with her uncle in Nashville; an aunt in Nashville; her apartment on Old Hickory Boulevard; and now her parents' home in Rome.  There is an abundance of proof that Mother exposed Vadah in Nashville to people who, at a minimum, had previously used drugs.  These include Mother's aunts, Missy and Doris, with whom she is close, as well as Mother's best friend, Jody Herendeen.  Mother had allowed each of these three individuals to keep Vadah for her. When asked if these people were still using drugs, Mother stated that she did not know; but it is obvious from the record that Mother, within a year of the custody hearing, had allowed Vadah to stay overnight with all three of these people even though Mother knew they had used drugs in the past and could not say,

8

with any certainty, that they were no longer engaged in such activity.

While Mother moved to Rome on the eve of the custody hearing, it is clear that she still has significant ties to the Nashville area. Her boy friend lives in Nashville. She testified that the two of them had discussed marriage. When asked if she planned to move back to Nashville, she very cautiously said that she didn't "plan on moving back *any time soon*." (Emphasis added).

There is evidence in the record from which it could be reasonably inferred that while Mother is physically in Rome, her heart is still in Nashville. It is a reasonable inference from the proof that Mother intends to frequently visit, if not return to, Nashville. She testified that she had been back to Nashville since her recent "move" to Rome and that she took her child with her. Her testimony does not reflect that she has made a conscious decision to keep Vadah away from her aunts or her best friend, despite her lack of knowledge as to whether they are still using drugs.

Because of all of the above, we cannot say that the evidence preponderates against a finding that Father's abode in Huntsville is more stable than Mother's situation, involving, as it clearly does, both time in Nashville as well as time in Rome.

B.

In the alternative, Mother argues that when considered in the light of all of the factors enumerated in T.C.A. § 36-6-106, the evidence preponderates against a finding that it is in Vadah's best interest to place her sole custody with Father. Again, we disagree.

The guardian litem appointed in this case concluded that both of the parents were fit to have Vadah's custody. She concluded that Mother should be awarded custody and so recommended. She was persuaded that the residence in Rome was the best place for Vadah to live. However, the guardian ad litem acknowledged that Mother was emotionally "fragile," something also acknowledged by Mother's counsel in her closing argument.[5] Such a conclusion is not inconsistent with Mother's psychological evaluation in the April-May, 1998, time frame, that was performed by Dr. Susan M. Bumgardner, a licensed clinical psychologist, shortly before the custody hearing below. While finding "no indication of any serious, stable psychopathology that would necessitate therapy," Dr. Bumgardner did state that tests performed in connection with the evaluation "suggest that [Mother] is a little more self-absorbed than most people and that she may be less aware of the impact of her actions on the world around her than most people." There was evidence that Mother had been medicated in the past for depression.

---

[5]"Ms. Kemp [formerly Hale] is a fragile woman. We admit that. She has a history of panic attacks. Her mother has panic attacks. It appears to run in her family. But she's doing okay."

10

Mother and Father both admitted to using marijuana, cocaine, and Valium while they were married; but the proof reflects that neither had used drugs for approximately a year prior to trial. The trial court accepted this evidence at face value, as do we.

The trial court was impressed with Father's interactions with Vadah during visitation. Other witnesses testified that Father was a good, attentive parent. Mother even acknowledged that she knew of nothing to indicate Father had ever harmed Vadah in any way. When asked at an earlier hearing if she felt that Vadah was safe with her father, she answered in the affirmative.

Contrary to Mother's assertion, there were a number of factual matters about which there was a dispute between the parties. Mother's evidence was to the effect that father had threatened his former wife, her family and even his daughter if he did not get custody. Father denied all of this. Mother said that Father did not discourage her admitted use of marijuana during her pregnancy; Father testified that he did. Mother asserted that Father was not adept at administering Vadah's breathing treatments for her asthma.[6] Father said he was very proficient in this phase of Vadah's care. Mother's proof was to the effect that Father had threatened that if he had Vadah, Mother would not get to see him; again Father denied that he had made such a statement. Mother testified that Vadah would wake up crying shortly after returning from visitation with her father;

_____

[6]Mother smokes; Father does not. In fairness, it should be noted that Mother denies smoking in the child's presence.

11

he testified that his daughter did not want to leave him at the conclusion of visitation. Mother offered evidence that Father had attempted to take his life; Father denied that he tried to commit suicide. These and other disputes required the trial court to make credibility determinations. The trial court's judgment that Father should be the sole custodian of Vadah tends to validate Father's credibility on these various issues. These determinations naturally weigh on our own preponderance of the evidence evaluation.

We recognize that there is proof supporting a conclusion that Mother should be awarded Vadah's custody: the fact that Mother has been the child's primary caregiver during most of the child's life; the fact that, when Mother is in Rome, she has available to her a caring network of family to help her with Vadah; the recommendation of the court-appointed guardian ad litem; and the suitability of the residence of the maternal grandparents in Rome. However, before we can disturb the trial court's judgment, we must find that the evidence preponderates *against* what that court did. Considering all of the evidence, we do not so find, and hence must honor the presumption of correctness that accompanied the record to this appellate court. Rule 13(d), T.R.A.P.

Mother's issues are found to be without merit.

The judgment of the trial court is affirmed. Costs on appeal are taxed against the appellant. This case is remanded to the trial court for such further proceedings, if any, as may be

12

necessary, consistent with this opinion, and for collection of costs assessed below, all pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Herschel P. Franks, J.


_____
William H. Inman, Sr.J.