CECIL WAYNE CRAFT,                )
                                  )
        Plaintiff/Appellant,      )
                                  )        Appeal No.
                                  )        01-A-01-9609-CH-00417
VS.                               )
                                  )        Humphreys Chancery
                                  )        No. 22-221
PATRICIA CAROL CRAFT,             )
                                  )
        Defendant/Appellee.       )

FILED

March 19, 1997

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE
MIDDLE SECTION AT NASHVILLE

APPEALED FROM THE CHANCERY COURT OF HUMPHREYS COUNTY
AT WAVERLY, TENNESSEE

THE HONORABLE ALLEN W. WALLACE, JUDGE


FOR APPELLANT:                        FOR APPELLEE:

A. RUSSELL WILLIS                     Not represented
WILLIS & KNIGHT
215 Second Avenue North
Nashville, Tennessee 37201


AFFIRMED AND REMANDED


                                      BEN H. CANTRELL, JUDGE


CONCUR:
TODD, P.J., M.S.
KOCH, J.

# O P I N I O N

The trial court granted both parties a divorce, granted custody of the two children to the wife, set child support at $1,500 per month, and divided the marital property. On appeal, the husband challenges the award of custody, the amount of child support, and the requirement that the husband pay the wife $50,000 as her share of the equity in the business that was awarded to him. We affirm the trial court.

## I. Child Custody

The parties were married in 1973. They both worked during their first eight years of marriage. Mr. Craft began as a construction worker, but was eventually able to establish a sawmill and pallet manufacturing business on land that had been owned by his family. Craft Woodworks prospered, and the parties built a home in McEwen. They subsequently decided that they wanted children, and that it would be feasible for Mrs. Craft to quit her job to raise the children full-time. They produced a boy and a girl, Derrick Wayne Craft, born on August 1, 1982, and Ashley Lauren Craft, born on November 6, 1985.

In 1988 a violent argument over money led to a separation. The parties reconciled, but a growing coolness between them impelled the husband to file for divorce in 1994. Both parties asked for custody of the children. At trial, each party testified as to the shortcomings of the other. The judge apparently felt they both were good parents, but in the final decree of divorce, filed April 18, 1996, he awarded custody of the children to the wife, with reasonable visitation granted to the husband.

In the appellant's brief, Mr. Craft argues that the trial court erred in granting custody of both children to the wife. He claims that she is less fit to have custody because she drinks at least three or four beers every night while watching television, and because she goes to a nearby restaurant every morning for coffee, often leaving the children alone at home.

He claims that he is more fit because he has established a warm bond with his fourteen year old son Derrick, and because Derrick chooses to spend a lot of time with his father, including working with him at the sawmill over the summer. Although Mr. Craft is here seeking custody of both children, it is clear from the pleadings below that he is chiefly interested in establishing custody of his son.

Mrs. Craft failed to file a timely brief in response to the appellant's brief, and failed to timely respond to this court's subsequent show cause order as to why this appeal should not be submitted for a decision on the record and on the appellant's brief alone, in accordance with Tenn. R. App. P. 29(c). Because of her failure to respond, we ordered that the appeal be limited to a Rule 29(c) review. Mrs. Craft subsequently filed a motion for an extension of time in which to file her brief, and we denied the motion. We will accordingly examine the record to determine if Mr. Craft's assertions entitle him to a change of custody.

We must first state that a decision of the trial court in regard to a question of child custody is presumed on appeal to be correct unless the evidence preponderates otherwise. *Dalton v. Dalton*, 858 S.W.2d 324 (Tenn. App. 1993). The paramount consideration for the trial court must always be the best interest of the child or children. *Bevins v. Bevins*, 53 Tenn. App. 403, 383 S.W.2d 780 (1964). *Malone v. Malone,* 842 S.W.2d 621 (Tenn. App. 1992).

Custody determinations are frequently a matter of comparative fitness, and in such cases, no implication of the unfitness of the non-custodial parent may be drawn from the court's decision to place custody in the other parent. *Bah v. Bah*, 668 S.W.2d 663 (Tenn. App. 1983). The case before us obviously involves two capable parents, but although neither party is unfit, neither party is perfect either.

Mr. Craft balked at getting braces for Derrick, even though Mrs. Craft testified that the boy needed braces and that he was embarrassed about his crooked teeth. The appellant also let health insurance for his children lapse after the parties separated. It also appears that Mr. Craft's business obligations might sometimes make it difficult for him to attend to his children when they need him, but that the liberal visitation that he has enjoyed allows them to receive the benefits of their relationship with him when when he is available.

Although Mrs. Craft could perhaps make better use of some of her time with the children while they are still young, we do not draw any implications of neglect from the evening recreation that has been described, or from her desire to drink coffee and converse with adults in the mornings. If she lived in one of the more crime-ridden urban neighborhoods in this state, we might feel differently about a parent leaving her children alone during the day on such a regular basis when it is not a matter of necessity, but in rural Humphreys County, we need not be quite as concerned.

On balance, we do not feel that the evidence preponderates against the trial court's award of custody to Mrs. Craft. The record shows her to be more closely attuned to the needs of her children, more responsive to those needs, and and more able to dedicate her time to them than is Mr. Craft.

## II. Child Support

The trial court found Mr. Craft's real income to be in the range between $55,000 and $60,000 after taxes.[1] The court ordered him to pay $1,500 per month in child support, stating that the amount was "less than the child support guidelines in that the male child spends more than the usual amount of time for visitation with the father."

The court's finding of income was based upon Mr. Craft's business records and his personal income tax returns. The returns showed that Mr. Craft had gross personal income of $101,248 in 1990, $100,643 in 1991, and $89,451 in 1992. On January 1, 1993, a contract to supply wooden pallets to Quebecor Printing was terminated because Quebecor decided to switch to plastic pallets. The Quebecor contract had accounted for "98 or 99 percent" of Mr. Craft's business, and his 1993 return showed that his income had plummeted to $22,973. In 1994, he reported income of $24,064. His business records indicated income of $14,000 for the first three months of 1995.

In calculating the gross personal income of a self-employed individual for the purpose of applying the child support guidelines, the reasonable expenses of producing that income may be deducted from revenues. Depreciation is not considered a reasonable expense. Rules of Tennessee Department of Human Services 1240-2-4-.03 (3)(a). *Kimble v. Kimble*, Court of Appeals No. 01A01-9503-CV-00049 (filed August 8, 1996).

---

[1] A trial court does not normally have to calculate the after-tax income of the non-custodial parent, as the tables appended to the child support guidelines provide an after tax-figure and support amount for each level of gross income. However, the guidelines note that child support for the self-employed must be calculated separately, as the FICA rate for that group is higher than for those employed by others.

Though the gross income that Mr. Craft reported on his 1040 forms for 1993 and 1994 was less than $25,000 each year, he factored in depreciation to arrive at those figures. He concedes that for the purpose of the guidelines, the correct figures for both years would be over $50,000 in gross income and over $45,000 in net income. He argues, however, that under the guidelines, the proper amount of child support for such an income would be closer to $1,100 per month than to $1,500.

We believe, however, that there is more than enough evidence in the record to support the trial court's findings as to Mr. Craft's income. First, there is the fact that in prior years, Mr. Craft was able to earn substantially above the amount the trial court wishes to hold him to. Second, there are indications that he is recovering financially from the impact of losing his most lucrative contract, and that his income is rising again. Of relevance here is his purchase of a backhoe and his creation of a new business based on it. Third, the testimony of William J. Nieman, who appraised Craft Woodworks, indicates that Mr. Craft managed to increase his lumber inventory from $7,000 to over $59,000 between 1990 and 1995, permitting an inference that during some of those years at least, his income tax returns understated what would have been available to him as personal income, if he had not chosen instead to increase his investment in Craft Woodworks.

While it is possible that Mr. Craft may never again earn as much as he did in 1990 and 1991, the evidence does not preponderate against the trial court's finding that that he is capable of earning between $55,000 and $60,000 per year after taxes, and we affirm its order that he pay $1,500 per month as support for his two children.

### III. Valuation of the Marital Property

The trial court granted Mrs. Craft the house in McEwen, an eighty-seven acre tract of land in the country, furniture, a GMC van, and an IRA worth $6,000. The husband was granted the sawmill business and an IRA worth $16,000. The trial court valued Craft Woodworks at $195,000, and ordered Mr. Craft to pay his former wife $50,000 over a ten year period for her share of the equity of the business.[2]

The parties managed to achieve almost perfect agreement on the value and disposition of every piece of marital property, except for Craft Woodworks. Mr. Craft claims that the business is worth only $122,500 (although he testified at trial to a value of $135,000) and he has chosen to assert an unusual theory to support his claim for relief from the trial court's finding of the sawmill's value.

An appraisal performed at the behest of the appellee (the Neiman-Ross appraisal) was entered into the record, and its preparer testified at length as to how he arrived at a value of $195,200 for Craft Woodworks. Counsel for the appellant unaccountably failed to introduce an appraisal commissioned by his client (the Kitrell Appraisal) which would have allegedly shown the property to be worth only $122,475. Mr. Craft's attorney also allegedly failed to present him with a copy of the Neiman-Ross appraisal until just before Mr. Craft was called upon to testify, thus giving him no opportunity to review the ninety-two page report for accuracy.

The appellant argues that this court should reverse the trial court's finding as to the value of Craft Woodworks, because he received ineffective assistance of counsel. He relies upon language in a recent case before the Eastern Division of this court, where the court actually declined to grant relief on such a theory, but stated:

---

[2]This figure was suggested by Mrs. Craft's attorney, who reasoned that subtracting first the roughly $21,000 business debt from the $195,000 valuation of Craft Woodworks, and then the $75,000 value of the residence that was granted to Mrs. Craft alone, one would arrive at a figure of about $99,000 for the undivided equity in the business, which could then be divided equally between the parties.

> "... although we hold, as a general rule, that in civil cases relief may not be premised upon the theory of ineffective assistance of counsel, we recognize that there may be cases where the facts are so egregious that justice may require some relief."

*Thornburgh v. Thornburgh*, Appeal No. 03A01-9602-CH-00053 (Filed July 17, 1996).

Mr. Craft argues that this is such a case, but we do not agree. Although Mr. Craft may be understandably unhappy with the performance of his attorney, the result is not even close to the sort of manifest injustice that would be required before this court would consider granting him the extraordinary remedy he seeks.

We have examined the copy of the Kitrell appraisal that Mr. Craft has appended to his brief, though the different methodologies used in the two appraisals make them difficult to compare. Mr. Kitrell has simply stated what he calls a fair market value for each piece of sawmill equipment and rolling stock, and added to the sum his estimate of the value of the land and buildings to reach a total value for the business.

Mr. Neiman gave both a fair market value and a liquidation value to each piece of equipment, to which he added his own estimate of the value of the inventory, the land and the buildings. However, he used the results as only one element in a weighted valuation that also considered other methods of valuing business property, including approaches based on revenues and upon sales of comparative properties.

We note that the fair market equipment value stated in the Kitrell appraisal is quite close to the liquidation value of the same assets stated in the Neiman-Ross appraisal. Though Mr. Neiman did attribute a much higher fair market value to the equipment, he only applied the liquidation value to the weighted approach by which he arrived at his final valuation of the property.

Another major difference between the two appraisals is that Mr. Neiman included the inventory of lumber in his appraisal, while the Kitrell appraisal contains no mention at all of inventory. If Mr. Kitrell had added to his own figures the $59,244 inventory value stated in the Neiman-Ross appraisal, he would have reached an appraised value of $181,719, still somewhat below Mr. Neiman's estimate, but leaving a considerably smaller gap than Mr. Craft asserted in his brief.

However, this discussion of value is perhaps beside the point, as we believe the trial court could have fashioned the same award of marital property to Mrs. Craft, even if it had accepted Mr. Craft's estimate of the value of Craft Woodworks. The court is not required to order an equal division of marital property, but only an equitable one. *Ellis v. Ellis*, 748 S.W.2d 424 (Tenn. 1988).

Factors to be applied in determining what would constitute an equitable division of marital property are many, and include the duration of the marriage, the age of the parties, the earning capacity of each party, and the needs of each party. Tenn. Code Ann. § 36-4-121(c). All of these factors would support a generous award to Mrs. Craft out of the assets of Craft Woodworks.

We also note that Mrs. Craft's counter-complaint asked for "a reasonable amount of spousal support," and at one point in the hearing, she testified that she needed monthly support of between $500 and $700 per month to continue to live as she had prior to her divorce. The trial court did not mention spousal support in its final decree, though Mrs. Craft would appear from the record to be a likely candidate for rehabilitative alimony. See Tenn. Code Ann. § 36-5-101(d).

The court's $50,000 award to Mrs. Craft, if paid in monthly installments over ten years time amounts to a monthly income of less than $500 per month ($416.67 to be exact). Since the factors listed in Tenn. Code Ann. § 36-5-101(d), for

the court to take into account in setting spousal support includes under section (H) "[t]he provisions made with regard to the marital property as defined in § 36-4-121," we can infer that even if the trial court erred in its valuation and division of marital property, such an error would be harmless, in view of the likelihood that court would have ordered spousal support if sufficient funds were not available from the marital estate.

## IV.

We affirm the order of the trial court. Remand this cause to the Chancery Court of Humphreys County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant.

_____
BEN H. CANTRELL, JUDGE

CONCUR:

_____
HENRY F. TODD, PRESIDING JUDGE
MIDDLE SECTION

_____
WILLIAM C. KOCH, JR., JUDGE