# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 12, 2000 Session

## JEANNE MICHELE ROGERS HUDGENS v. KEITH ALLEN ROGERS

**Direct Appeal from the Circuit Court for Sumner County**
**No. 19249C      Arthur E. McClellan, Judge**

---

**No. M2000-00239-COA-R3-CV - Filed January 4, 2001**

---

The mother of four minor children appealed the trial court's decision to change custody from Mother to Father based on a material change in circumstances. Prior to the entry of that order, it had been determined that an agreement, originally announced to the court which awarded custody of the children to Mother, had been set aside due to the court's finding that there had been no meeting of the minds of the parties as several critical issues had been left unresolved. We have determined that the court was correct in that decision. Therefore, the standard which the trial court should have applied was one of comparative fitness and best interest of the children rather than a material change of circumstances. This matter is reversed and remanded to the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S. and DON ASH, SP. J., joined.

Laura Y. Goodall, Gallatin, Tennessee and Robert Todd Jackson, Nashville, Tennessee, for the appellant, Jeanne Michele Rogers Hudgens.

Mark T. Smith, Gallatin, Tennessee, for the appellee, Keith Allen Rogers.

### MEMORANDUM OPINION[1]

Jeanne Michele Rogers Hudgens appeals from an order of the trial court granting Keith Allen Rogers exclusive custody of the parties' minor daughter, Haley Nicole Rogers and joint custody of the parties' minor children Ashley Michele Rogers, Brandon Keith Rogers and Lindsey Rogers. The

---

[1]**Rule 10(b) Memorandum Opinion**. The Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in a subsequent unrelated case.

order states that the trial court found there has been a significant material change in circumstances since its order of September 16, 1999 and further recites as follows:

> Relative to custody, the Husband shall have exclusive custody of Haley Nicole Rogers until she reaches maximum medical improvement. The parties shall have joint custody of Ashley Michelle Rogers, Brandon Keith Rogers, and Lindsey Rogers with these three children living with their Mother until such time as the Father establishes his permanent physical residence in Portland, Tennessee, at which time these three children shall then live with the Father with the Father being the primary custodian. The mother shall have visitation privileges with the minor children at that point in accordance with paragraphs 3, 4, and 5 of this Court's order of December 28, 1999. At the point that Haley reaches maximum medical improvement, her custody arrangement will then revert to joint custody and she will be allowed to live with her siblings with the Father and she will be permitted visitation with her mother in accordance with paragraphs 3, 4, and 5 of the December 28th order.

Wife filed a complaint for divorce seeking, among other things, custody of the parties' minor children. Father filed an answer and counter complaint likewise seeking custody of the children.

By order of May 28, 1999, Judge Thomas Goodall entered an order declaring the parties divorced in accordance with T.C.A. § 36-4-129. The order further ordered both parties to submit to mediation and, in the event mediation was not successful, the matter was set for hearing for July 28, 1999. Several orders were issued by Judge Goodall prior to the entry of this order.[2] On September 16, 1999 this matter was presented to Judge William M. Dender, sitting by designation of the Chief Justice following the unfortunate death of Judge Tom Goodall. At that time the court inquired of Husband's counsel whether a petition for temporary custody was the last thing filed. Counsel responded "That's the last thing that was filed. As opposed to doing that Temporary Custody, what we agreed is, just to put all issues on for the Court today." Wife's attorney in her opening statement said "I concur that custody is the primary issue before this Court, and I agree that the best interest of the children are, in fact, the appropriate consideration." Following opening statements, the court suggested that the parties recess to see if they could resolve their differences. A recess was then taken from 9:48 a.m. until 2:44 p.m. When court resumed, Husband's attorney announced to the court that "I believe that we have reached an agreement on, I think, everything. There are a few areas that we're going to have to fill in the blanks on with some monies, and I think Ms. Dunning and I can do that." At that point Wife's attorney, Ms. Dunning, announced a

---

[2] A restraining order was entered on March 1, 1999. A show cause order was entered on March 1, 1999. A supplemental restraining order was issued on March 19, 1999. An ex parte order of protection was entered March 19, 1999. A show cause order was entered on April 6, 1999. On April 13, 1999 an order was entered mutually restraining the parties and ordering them to cooperate with a licensed psychologist to perform a custodial evaluation of the family. An agreed order for continuance was entered April 13, 1999. An agreed order was entered April 22, 1999 making provisions for the various duties and responsibilities of the parties inasmuch as the court had previously ordered that the parties continue to reside together in the marital residence and a show cause order was entered on May 12, 1999.

declaration of agreement to the court that Mother would have custody and a visitation schedule was set forth. Child support pursuant to the guidelines was to be $1,540 per month as well as additional items including how private school tuition would be determined and insurance coverage. Father was to maintain health insurance and each party pay half of any uncovered medical expenses. Each parent would be able to take the child deduction for two children. Distribution of marital property was agreed upon. Wife was to keep the house and agree to refinance it or to remove Husband's name from the debt. Wife was to pay the Visa credit card which was the only marital debt. Each party was to pay debts incurred in their individual names. Husband was to maintain his life insurance and the attorneys agreed that a trust agreement would be entered into within the next thirty days. Wife's attorney then announced that there were two more issues that she and Husband's attorney would "sit down and knock out together." The first item, involving some household repairs that Mr. Rogers had been under order to pay, would be split 50/50. The second issue concerned unpaid child support. Husband said he had paid those and would submit proof of that but, if he had not met the $1,540 burden, he would pay the difference. Each party was to pay their own attorney's fees and no alimony was to be awarded. Wife's maiden name was to be restored. Each party was sworn and when Mr. Rogers was asked if he had agreed to everything that had been said, he raised the question of his insurance being in trust and, after discussion, the court indicated that the lawyers should add working that out to the two things that they had previously said would need to be worked out. Next was a discussion concerning insurance on one of the vehicles which needed to be resolved. Ms. Rogers testified that she had heard the announcement that was made and those terms were agreeable to her. However, she then raised a question about the most recent month's child support.

An order was entered December 28, 1999 by Judge Arthur McClellan, Judge Goodall's successor, which stated that the cause came on to be heard on the 16th day of September, 1999, an obvious reference to the hearing before Judge Dender on that date wherein the parties announced that they had reached an agreement as heretofore set out. The December 1999 order further recited that the parties had stipulated to an agreement as set forth in detail in that order and which contains essentially the same agreement to which the parties apparently agreed to and announced before Judge Dender on September 16. The order awarded custody of the four minor children to Wife with Husband to have visitation as set forth in a specific visitation schedule. Several issues were reserved by the court for further orders, including Husband's requirement to maintain life insurance and Husband's responsibility for the cost of Ashley attending Highland Academy.

The matter came to be heard further before Judge Dender on September 29, 1999, upon request of counsel for the parties to resolve disputes as to the terms of the agreement announced to the court on September 16, 1999. Following that hearing, on October 12, 1999, Judge Dender entered an order which provided that the court was of the opinion that the dispute should be resolved in part if not in full by a transcript of the announcement and ordered that a transcript of the announcement be obtained and filed with the court. The order further provided that the matter should come on for review on October 13, 1999.

On October 19, 1999, Judge Dender entered an order requiring each party to pay one-half of the costs of the transcript ordered by the previous order and provided that the matter would be

reviewed on October 26, 1999. The matter did come before Judge Dender again on October 26, 1999, following which Judge Dender entered an order on January 14, 2000, which states as follows:

THIS CAUSE came on to be heard on the 26th day of October, 1999 before the Honorable William Dender, Circuit Court Judge Sitting by Special Designation, upon the request by the Wife, Jeanne Michele Rogers, to find that all disputes involved in this divorce were resolved by statements of counsel and the parties on September 16, 1999. Upon review of the filed transcript of the announcement to the Court which was made on September 16, 1999 and after hearing the argument of counsel, the Court found that there was no meeting of the minds in the announcement of September 16, 1999 and therefore the entire proposed announcement should fail. Therefore the Court will not enforce part of an agreement without having a complete agreement. The Court finds that if the parties cannot reach an agreement as to all issues and submit it in the form of an order, the entire divorce action, excluding the fact that the parties are divorced, should proceed to trial and the Court will at that time determine how to resolve all remaining issues. It is

ORDERED, ADJUDGED AND DECREED that due to the fact that the parties could not agree on all issues to resolve all matters involved in their divorce, that there is no agreement and all remaining issues in the divorce action pending between the parties should be set for a final hearing so they can be resolved by the Court.

The matter came before Judge McClellan on December 17, 1999, and an order was entered on December 28, 1999, which provides in pertinent part as follows:

This cause came on to be heard on the 17th day of December, 1999 upon the Motion for Request for Temporary Custody and Permission to Keep the Children when Mother not Available, and upon the Motion for Continuance, all filed by KEITH ALLEN ROGERS (hereinafter "Husband"), and upon the Response to the "Request" filed by JEANNE MICHELLE ROGERS (hereinafter "Wife") and upon review of the record in this cause, the Court is of the opinion and finds as follows:
1. That the parties made a stipulation in open court on September 16, 1999, a transcript of which is of record in this matter; and that the parties should be bound to the terms and conditions which were undisputed as announced at that time.
2. That the trial of this cause is set for January 3, 2000, which will not be continued.
3. At hearing on January 3, 2000, the Court will entertain the following three issues:
a) custody based upon a change of circumstances since the announcement to the Court on September 16, 1999;
b) life insurance trust by the Husband;

-4-

c)   requirement that Husband pay for private education of the oldest minor child.

4.   Pending final hearing, the visitation set forth in the stipulation announced to the Court on September 16, 1999 shall remain in full force and effect. In the event that the Mother has to leave the children in the care of a person other than immediate family (her present husband excluded), the Husband shall be permitted to have the children during that time. The Mother shall notify the Husband at his pager number of 783-9031 and if he does not respond to this page, he shall be deemed to have waived these rights.

As indicated in the above order, the court determined that custody would be based upon whether there had been a change of circumstances since the announcement to the court on September 16, 1999.

By order of January 7, 2000, following hearings conducted on January 3 and 6, 2000 before Judge McClellan, the court found that there had been a significant material change in circumstances since the September 16, 1999, hearing. With the respect to custody, the order provided as follows:

Relative to custody, the Husband shall have exclusive custody of Haley Nicole Rogers until she reaches maximum medical improvement. The parties shall have joint custody of Ashley Michelle Rogers, Brandon Keith Rogers, and Lindsey Rogers with these three children living with their Mother until such time as the Father establishes is permanent physical residence in Portland, Tennessee, at which time these three children shall then live with the Father with the Father being the primary custodian. The mother shall have visitation privileges with the minor children at that point in accordance with paragraphs 3, 4, and 5 of this Court's order of December 28, 1999. At the point that Haley reaches maximum medical improvement, her custody arrangement will then revert to joint custody and she will be allowed to live with her siblings with the Father and she will be permitted visitation with her mother in accordance with paragraphs 3, 4, and 5 of the December 28th order.

The order also revised the payment of child support among other things.

Having reviewed the transcript of the September 16, 1999, hearing before Judge Dender, which transcript was reviewed by Judge Dender prior to reaching his decision, we are unable to determine that Judge Dender reached the wrong decision in determining that there had not been a meeting of the minds of the parties and that there was no agreement between the parties.

We are unable to determine from the record why these matters were pending before two different judges. However, we are of the opinion that, when Judge McClellan entered his order of December 28, 1999, Judge Dender had conducted a hearing prior to that date on October 26, 1999 to consider Wife's request that the court find that all disputes had been resolved at the September

16, 1999 hearing. Although Judge Dender did not enter an order until January 18, 2000, at the time of the entry of Judge McClellan's order of December 28, 1999, the matter was still pending before Judge Dender to determine the validity of the September 1999 agreement. As we have noted, Judge Dender did determine that that agreement was not valid. We are of the further opinion that the order of December 28, 1999 should not have been entered while the issue of the validity of the agreement was still pending before Judge Dender. The outcome of Judge Dender's decision would determine the standard of review when the matter ultimately came before Judge McClellan. If the agreement were valid, the standard would be a change of circumstances, which was the standard that Judge McClellan applied in ultimately granting custody to the father. If the agreement was not valid, the standard would be that of comparative fitness and best interests of the children. *See Bah v. Bah*, 668 S.W.2d 663 (Tenn. Ct. App. 1983).

Having determined that Judge Dender was correct in his decision that the agreement announced in open court on September 16, 1999, was not valid because there was not a meeting of the minds between the parties due to the fact that major issues were unresolved, the hearing before Judge McClellan should have been conducted applying a standard of comparative fitness and best interests of the children. Therefore, the matter is remanded to the trial court to determine custody based on the standard of comparative fitness and best interests of the children and to determine any other issues raised by the pleading which the parties are unable to resolve prior to the hearing, with the exception of the order of Judge Goodall of May 28, 1999 declaring the parties to be divorced in accordance with T.C.A. § 36-4-219.

The costs of this appeal are taxed one-half to Jeanne Michelle Rogers Hudgens and one-half to Keith Allen Rogers, and their sureties, for which execution may issue if necessary.

 

 

_____
DAVID R. FARMER, JUDGE