IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 21, 2009

**JOSEPH MARION BARKER**
v.
**ANGEL CHANDLER**

**An Appeal from the Chancery Court for Gibson County**
**No. 16976     George R. Ellis, Chancellor**

---

**No. W2008-02255-COA-R3-CV - Filed September 18, 2009**

---

This post-divorce appeal challenges the "overnight paramour" provision in the parties' parenting plan. By agreement, the parties sought to modify the parenting plan for their two teenage children, a son and a daughter. At the time, the father lived with his new wife, and the mother lived with her unmarried partner of nine years. The parties agreed that the father would be the primary residential parent of their son, and that the mother would be the primary residential parent of their daughter. The permanent parenting plan form completed by the parties included a "paramour provision," in accordance with a local court rule mandating that parenting plans prohibit the non-spouse paramour of either parent from spending the night in the same residence as the minor child. The mother objected to the inclusion of this provision, arguing that the children's best interest would be served by permitting them to stay in her home along with her partner. Despite finding that the children's well-being would not be adversely impacted by the arrangement on which the parties had agreed, the trial court refused to eliminate the provision on the basis that state law and public policy required that such a provision be included. The mother now appeals. We reverse, finding that Tennessee statutes and public policy dictate that the children's best interest is the paramount consideration, and thus the trial court must have the discretion to alter or eliminate the paramour provision in a parenting plan if the court finds that doing so is in the children's best interest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Reversed and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Gregory W. Minton and Joseph M. Dash of Medina, Tennessee; Lucian T. Pera and Brian S. Faughnan of Memphis, Tennessee; and Christine P. Sun and Tricia R. Herzfield of Nashville, Tennessee for the appellant, Angel Chandler.

No Appellee Brief was filed.

**OPINION**

Angel Chandler ("Mother") and Joseph Marion Barker ("Father") were married in February 1992. They had two children during the marriage, Z.B., born April 9, 1993 ("Son"), and C.B., born May 10, 1995 ("Daughter"). After Father engaged in an extramarital affair with his now-current wife, Mother filed a petition for divorce. In November 1998, the trial court entered a final decree of divorce, in which Mother was designated as the primary residential parent of Daughter, and Father was designated as the primary residential parent of Son. Each parent had regular parenting time with the child who lived with the other parent. This parenting plan did not include any provision restricting the parents from having any person present, overnight or otherwise, while the child resided with the parent.

About a year after the divorce, Mother began a relationship with a same-sex partner, M.C., with whom she now lives.[1] At some point, Father married his current wife. In January 2001, upon agreement of the parties, the trial court modified the parenting plan to designate Mother as the primary residential parent of Son as well as Daughter. This modified parenting plan likewise did not prohibit the parties from having an overnight paramour in the presence of the children.

In August 2002, Mother moved to North Carolina with her partner M.C.[2] At that time, Mother and Father agreed that Father would be the primary residential parent for the children.[3] Several years later, Mother moved back to Trenton, Gibson County, Tennessee, where Father lived along with his wife ("Stepmother") and the children. Mother's partner, M.C., lived in both North Carolina and in Trenton with Mother, "splitting time" between the two states.

After Mother moved back to Tennessee, on May 22, 2007, Father filed a petition to modify the parties' parenting plan. Mother filed a counter-petition for modification. On November 19, 2007, the trial court entered a consent order requiring all of the parties involved — Father, Mother, Stepmother, M.C., and the two children — to make themselves available for psychological evaluations and testing. The trial court also ordered that, pending final resolution, Father would be the primary residential parent of Son, and Mother would be the primary residential parent of Daughter.

The court-ordered evaluations were conducted by clinical psychologist David Pickering, Ph.D. ("Dr. Pickering"). On May 1, 2008, after completing the evaluations, Dr. Pickering submitted his report to the trial court. The report detailed the results of the mental status examinations and psychological testing for each subject, as well as observations about the parties' interactions with

_____

[1] Non-parties in this lawsuit will not be referred to by their full names because of privacy concerns.

[2] Though the court documents indicate that Mother moved to Vermont, Mother reported that she in fact moved to North Carolina.

[3] Mother indicated that, at the time she moved, the parties had agreed that the children would join her when she was settled in North Carolina, but that Father subsequently "had gone back on his word."

their respective partners and with the children. The report indicated that Son had a positive relationship with both parents, as well as Stepmother and M.C. The report also indicated that Daughter had a positive relationship with Mother and M.C., and that she had a fair relationship with Father. However, Dr. Pickering had substantial criticism of Stepmother and her parenting of Daughter, and he indicated that, unfortunately, Father tended to follow Stepmother's lead with Daughter. He characterized Daughter's relationship with Stepmother as quite problematic. Dr. Pickering indicated that Daughter suffered from depression stemming from her difficult relationship with Stepmother and opined that requiring Daughter to continue to reside with Stepmother would cause Daughter's emotional condition to further deteriorate.

In the conclusion of his report, Dr. Pickering recommended that Father remain the primary residential parent of Son, and that Mother remain the primary residential parent of Daughter. He noted that this arrangement would expose Daughter to Mother's paramour (M.C.) when she stayed at Mother's home and weighed this against the potential damage to Daughter's mental and emotional state from continuing to reside with Stepmother:

> Father is married to [Stepmother], so [Daughter] and [Son] are not exposed to any paramours at their father's home. However, since [Mother] is involved in a same sex relationship, and the State of Tennessee does not allow or recognize either same sex marriage or civil unions, their exposure to [M.C.], by definition, involves exposure to their mother's paramour. [Son] has positive relationships with all adults in this evaluation, and there appears to be no reason living with one parent would be better for him than living with the other. However, [Daughter's] relationship with [Stepmother] is so extremely negative, and [Stepmother's] actions toward [Daughter], no matter how good intentioned, appear to be exacerbating her depression, and could also be encouraging [Daughter] to behave negatively as an oppositional response to demands she perceives from [Father]. If [Daughter] were to live with [Father and Stepmother], it is likely the situation will deteriorate further, rather than improve. It is therefore recommended that the children's wishes guide the resolution of this situation. I would recommend placement with [Father and Stepmother] for [Son], and with [Mother] for [Daughter].

Dr. Pickering recommended liberal visitation for each parent and suggested that the children should be allowed to have frequent visitation together in the same household. He cited research showing no adverse impact on children living with parents with same-sex partners, and he indicated that the trial court would need to address issues involving the cohabitation of Mother and M.C. "It will be for the court to decide [issues] concerning [M.C.], due to the paramour clause in most visitation orders. However, current results do indicate [M.C.] is a positive parent surrogate for both children, and has appropriate relationships with them both."

On May 15, 2008, a hearing was conducted on the parties' motions for modification of the parenting plan. Dr. Pickering's report was submitted to the trial court for review and was entered into evidence. The parties told the trial court that they had agreed to follow the recommendations

in Dr. Pickering's report regarding the shared parenting provisions. Accordingly, they completed a standard form permanent parenting plan, developed by Tennessee's Administrative Office of the Courts ("AOC"), setting out the terms of the residential schedules for the children. This form included what is known as a "paramour provision," stating that "[a]ny paramour of any parent and that parent are not to spend the night in the same residence when that parent and one of the minor children are present." The AOC form is consistent with Rule 23:00 of the Rules of Chancery Court for the 28th Judicial District ("Local Rule 23"), which requires inclusion of the paramour provision in the AOC permanent parenting plan form.

Although Mother generally agreed with the permanent parenting plan, she objected to the inclusion of the paramour provision, given that M.C. lived with her in her home. The trial court noted Mother's objection but insisted that the paramour provision remain intact "like all in the rest of [parenting plans in] the state of Tennessee." The trial court clarified that "we're not talking about adverse impact [on the children] . . . . We're not going to make a distinction between paramours of one sex or the other." The trial court added, "I'm not saying that [Mother] and [M.C.] cannot be together. I'm specifically saying that they cannot sleep together while a child is in the house. . . . Apparently, Dr. Pickering found [M.C.] to be a positive influence. The issue is paramour overnight." The trial court reiterated, "I think that's a policy across the state of Tennessee. I don't know any Judge in this state that does not preclude paramours overnight when the children are present in the home." The trial court commented that, "if there's a reason not to put that in a permanent parenting plan, this will have to come from the wisdom of our appellate courts."

Within weeks after the hearing, Mother and Daughter moved back to live with M.C. in North Carolina. Naturally, this relocation altered the parties' parenting arrangements and also hindered the ability of Son and Daughter to see each other. The parties continued to agree that Mother would be the primary residential parent for Daughter, and Father agreed to Daughter's relocation to North Carolina with Mother. As before, the parties completed a parenting plan setting out the terms of the children's residential schedules. On September 4, 2008, the trial court entered an order consistent with the parties' agreement, and on October 2, 2008, it signed the new parenting plan. The final order and the parenting plan both included the paramour provision to which Mother had objected at the May 15, 2008 hearing. The order stated that, "as a matter of law, the paramour clause is required by the laws and public policy of the State of Tennessee . . . ." The trial court noted in its order that Mother reserved the right to challenge on appeal the inclusion of the paramour provision based on her view that such a provision is not required as a matter of law and that, in the alternative if such a provision is required, it violates her constitutional rights to equal protection, privacy, and due process. Mother now appeals, challenging only the inclusion of the paramour provision in the trial court's order and parenting plan. Father did not file an appellate brief in this case, and Mother's arguments are otherwise unopposed in this appeal.

Mother now argues, as she did in the trial court, that the trial court is not precluded as a matter of law from altering or eliminating the paramour provision in her parenting plan. She claims that Local Rule 23 is inconsistent with statutory law, is invalid, and cannot justify the paramour provision in this case. She further argues that including a paramour provision in the parenting plan

in this case was not in the best interest of the children. Alternatively, Mother argues, if such a provision is required, it violates her rights under the state and federal constitutions.

We note that the trial court's decision to include the paramour provision in this parenting plan did not arise from a finding based on evidence that such a provision was in the best interest of these children. Rather, the trial court felt constrained to include such a provision in the parenting plan "as a matter of law," despite evidence to the contrary relating to the children's well being.[4] Consequently, the threshold issue on appeal is whether the trial court was, in fact, legally precluded from altering or eliminating the paramour provision in the parenting plan. This issue is a matter of law, which we review *de novo* on the record, affording no deference to the trial court's decision. ***Union Carbide Corp. v. Huddleston***, 854 S.W.2d 87, 91 (Tenn. 1993).

In 2005, the legislature directed the AOC to develop a standard permanent parenting plan form "that shall be used consistently by each court within the state that approves parenting plans pursuant to § 36-6-403 or 36-6-404 on and after July 1, 2005." Tenn. Code Ann. § 36-6-404(d) (2005). The "Residential Parenting Schedule" section of the AOC form includes subsections with blanks for parties to fill in information related to the children's residential parenting time, day-to-day schedules, holiday schedules, and similar provisions, all of which are required by statute. ***See*** Tenn. Code Ann. § 36-6-404. The final subsection entitled "Other" is left blank and is obviously designed to give parties a place to include specially-designed provisions to address issues not covered in the form subsections. The standard form developed by the AOC at the direction of the legislature does not include a paramour provision.[5] However, Local Rule 23 for the 28th Judicial District requires courts in that judicial district to add the following in the "Other" section of the AOC form:

> Any paramour of either parent to whom a parent is not legally married is not to spend the night in the presence of or in the same residence with any minor child of the parties. The parents shall not use any illegal drugs, consume any alcohol or allow any other person to use any illegal drugs or alcohol in the presence of the minor children.

Local Rule 23. Local Rule 23 undoubtedly stems from the legion of Tennessee cases in which divorced parents are required to refrain from having an overnight paramour while their minor child is residing with them. ***See, e.g., Adams v. Adams***, W2008-00225-COA-R3-CV, 2009 WL 690697, at *1 (Tenn. Ct. App. Mar. 17, 2009); ***McDaniel v. McDaniel***, No. W2007-01587-COA-R3-CV, 2008 WL 5263605, at *1 (Tenn. Ct. App. Dec. 18, 2008). This reflects the common-sense understanding that the children can be adversely affected by exposure to such overnight paramour visits with a parent. Here, the paramour provision was included in the parties' parenting plan

---

[4]The trial court stated that the inclusion of the paramour provision in the parenting plan was "required by the laws and public policy of the State of Tennessee" but did not cite any specific laws to which it was referring.

[5]This form can be found on the AOC website, www.tsc.state.tn.us (under Programs & Services).

because it was mandated by Local Rule 23.[6] The issue, then, becomes whether the trial court is prohibited from altering or eliminating a paramour provision that is included in a parenting plan solely because of the requirement in a local rule such as Local Rule 23.

Despite the important considerations underlying Local Rule 23, such a local rule cannot bind the hands of a trial judge to make decisions that are in the best interest of the children who come before the court. Tennessee's courts have long held that the best interest of the child is the single most important factor in matters involving parenting time and visitation:

> [I]n all custody cases . . . the child's best interest is the paramount consideration. It is the polestar, the *alpha and omega*.
>
> * * *
>
> There are literally thousands of things that must be taken into consideration in the lives of young children, and these factors must be reviewed on a comparative approach . . . .
>
> * * *
>
> The only rigid principle is and must be that the best interests of the child are paramount in any custody determination.

*Bah v. Bah*, 668 S.W.2d 663, 665-66 (Tenn. Ct. App. 1983) (citations omitted; rejecting rigid application of the "tender years" doctrine and adopting the comparative fitness approach). This principle was adopted by Tennessee's legislature in enacting statutes governing custody disputes. *See* Tenn. Code Ann. § 36-6-106(a) (2005). It has been consistently reaffirmed by our Supreme Court. *In re C.K.G.*, 173 S.W.3d 714, 732 (Tenn. 2005); *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986). Thus, while a rule such as Local Rule 23 can be instructive, it is subordinate to Tennessee public policy mandating that trial judges make decisions regarding residential parenting of children "upon the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a).

In this case, the trial court stated that it included the paramour provision in the parties' permanent parenting plan *only* because it was constrained to do so under Tennessee law, presumably Local Rule 23. We find as a matter of law that this conclusion was erroneous. We make no judgment regarding whether inclusion of the paramour provision in this parenting plan serves the children's best interest in this case, and we make no decision as to whether Daughter's best interests are served by having Mother or Father designated as her primary residential parent. We hold only that the trial court was not required to include the paramour provision in the permanent parenting plan. Therefore, we reverse the trial court's decision and remand the case for the trial court to reconsider Mother's argument in light of our holding. This holding pretermits all other issues raised in this appeal.

---

[6] Interestingly, the alcohol and drug provision also mandated in Local Rule 23 was not included in the parenting plan at issue in this appeal.

The decision of the trial court is reversed and the cause is remanded for further proceedings consistent with this Opinion. Costs on appeal are to be taxed to Appellant Angel Chandler, and her surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE