# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
February 19, 2014 Session

## KATHRYNE B. F. v. MICHAEL B.

### Direct Appeal from the Circuit Court for Shelby County
### No. CT00182208    Karen R. Williams, Judge

### No. W2013-01757-COA-R3-CV - Filed March 13, 2014

### SEPARATE CONCURRENCE

HOLLY M. KIRBY, J., concurring separately:

I fully concur in the majority's decision to remand the case to the trial court for it to make findings of fact and conclusions of law that are sufficient to enable this Court to review the matter on appeal. I write separately only to comment on some points that we *can* glean from the appellate record about the trial court's reasoning.

First, the comments of the trial court in its discussion of Father's work schedule are concerning. The trial court noted that Father works a "split shift," that is, one day he may work from 7:30 a.m. to 4:00 p.m., the next day from 8:30 a.m. to 5:00 p.m., and the next from 2:00 p.m. to 10:30 p.m. In response to Mother's argument about the effect of Father's work schedule on his ability to parent their child, the trial court dismissed the argument by saying that "[t]his Court will not punish any parent for being gainfully employed" and "to say that. . .father is not being a good parent because he works what we used to call a split shift. . .in some random pattern, to punish him as a parent for doing that makes no sense."

In a previous case involving a custodial mother with a work schedule that required her to go to work in the very early morning hours, this Court clarified how such an atypical work schedule must be viewed in considering a request to modify an existing parenting arrangement. In *Wall v. Wall,* the mother was the child's primary residential parent; she had a work schedule that necessitated waking the child in the wee hours of the morning and bringing her to the babysitter's apartment so that the mother could be at work at 5:00 a.m. *Wall v. Wall,* No. W2010-01069-COA-R3-CV, 2011 WL 2732269, at *8 (Tenn. Ct. App. July 14, 2011). Faced with the father's request to change the designation of primary residential parent, the trial court commented: "She's having to get up early, I understand that

and I really wish her mother could get a different job with different hours, but there is probably tens of thousands of single mothers in this city who get up at 4:30, 5:00 in the morning to go to work and they have to make arrangements with their children because of that. Am I really supposed to change the custodial arrangement because she has to go to work early?" *Id.* at *17 n. 22. The trial court rejected the father's request to change the designation of primary residential parent and instead implemented a complicated parenting schedule, driven in part by the mother's early morning work schedule. The father appealed. *Id.* at *27. On appeal, this Court agreed "with the trial court's observation that thousands of single parents who are good parents work in jobs with similar hours, necessitating child-care arrangements for early-morning hours." *Id.* However, it stated that, while "[c]hildren of divorce are not immune from the need to accommodate a parent's job," the courts are obliged to consider the fact that "the burden on the child of such a parenting schedule is no small matter." *Id.* The Court explained:

> [W]hile virtually all divorced parents must work outside the home, and some parents must work atypical hours, it is not punishment to the parent to consider the effect of her work schedule on the child. Rather, it is the court's job to ensure that the everyday quality of the child's life is not sacrificed to meet the parents' needs or desires. Consideration of how "child-friendly" each parent's schedule must necessarily be part of that determination. "[T]he child's best interest in the paramount consideration. It is the polestar, the alpha and omega." ***Bah v. Bah***, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983) (emphasis in original). In this case, it is not unfair to Mother to consider the effect of her work schedule on [the child]; rather, it is unfair to [the child] not to consider it.

*Id.* at *28. In the case at bar, the trial court's comments indicate that it viewed consideration of Father's work schedule as "punishing" Father or calling him a "bad parent." Emphasis on the "fairness" to one parent or another is misguided; the trial court's focus should instead be on the child's best interest. In this case, if Father's work schedule means that the child must spend the majority of his waking hours in the care of someone other than his parent, that must be considered.

Second, I am puzzled by the trial judge's statement that she did not "see that [the child's] life is any different now than it was before," and the trial court's broad conclusion that there has been no material change in circumstances. At the time of the prior parenting order, Mother was the primary residential parent and lived in the United States. In light of Mother's contemplated marriage and move to Australia, the trial court designated Father as the child's primary residential parent, and Mother moved without the child to Australia. Since then, by the description of both parties, the parenting arrangement has evolved to accommodate the

child reaching school age, parenting time for Mother living across the globe, and Father's atypical work schedule.

For the trial court to find under this set of facts that there has been no material change in circumstances since the last parenting order is surprising to say the least. The trial court referred in general terms to the child having always spent substantial time with both sets of grandparents. Assuming that to be the case, it is still difficult to see how there has not been a material change in circumstances that would require the trial court to go on and consider whether a change in the designation of primary residential parent is in the child's best interest.

Mother argues that, in the current arrangement, Father does not function as the child's primary residential parent, that the paternal grandmother is fulfilling that role. Indeed, the proof in the record seems to show that the child spends most of each week in the care of the paternal grandmother, with Father going to the grandmother's home to see the child when Father is not at work. It may be simplistic to say, but no matter how loving and capable the paternal grandmother may be, she is not the child's parent. For Father to litigate to get the trial court to designate him as primary residential parent and then abdicate the lion's share of the parenting to someone else –even a grandparent– is concerning.

In light of the absence of factual findings and conclusions of law, we do not reach the merits but instead remand to the trial court to make such findings and conclusions. I raise these points in this separate concurrence so that the trial court can specifically address them in making its findings and conclusions on remand.

_____
HOLLY M. KIRBY, JUDGE