IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 5, 2000 Session

## KALLEY DEE FREY MUIRHEAD v. SCOTT ALLEN MUIRHEAD

**Appeal from the Chancery Court for Williamson County**
**No. 24883     Donald P. Harris, Chancellor**

_____

**No. M1999-02385-COA-R3-CV - Filed January 22, 2001**

_____

This appeal involves the custody of four minor children following dissolution of a sixteen (16) year marriage. The trial court awarded a divorce to Father on the ground of inappropriate marital conduct but awarded custody of the parties' four minor children to Mother. The trial court set child support, awarded rehabilitative alimony, and divided the marital property, awarding Mother the marital residence. The Mother appeals the property division and alimony award. The Father appeals the award of custody. We reverse the trial court's award of custody because Father is comparatively more fit than Mother to have custody, modify the award of rehabilitative alimony, vacate the child support award, and remand to the trial court for child support and visitation issues.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed as Modified**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S. and WILLIAM C. KOCH, JR., J., joined.

David B. Lyons, Nashville, Tennessee, for the appellant, Kalley Dee Frey Muirhead.

John M. L. Brown, Nashville, Tennessee, for the appellee, Scott Allen Muirhead.

### OPINION

The parties were married in 1983. The Father is a college graduate. The Mother has a GED and has taken some college level courses. The Father is a manager at Deutsche Bank earning in excess of $100,000 a year. The Mother has worked as a server and bartender. The parties were married for sixteen (16) years and have four (4) minor children (David born on October 2, 1983, Morgan born on February 20, 1987, and twin girls, Bronwyn and Paige born on July 12, 1989). The Mother also has an adult daughter from a previous marriage. For the most part, Mother was the primary care giver.

During the marriage, the parties used illegal drugs together including marijuana and cocaine. The Mother became addicted to drugs and ultimately had to seek treatment. She testified she has been drug free since 1992, but engaged in an inappropriate relationship with a teenage boy.

The parties separated in 1992. They reconciled and entered into a written reconciliation agreement in Pennsylvania which included a counseling requirement, psychological testing, and Mother's agreement to remain drug free. In 1995, Father was transferred to Nashville, TN. After relocating to Nashville, Father began having a sexual relationship with another woman.

The Mother began coaching a recreational roller hockey team in 1996. Again, the Mother began spending time away from home and was evasive about what she was doing. The Mother had another inappropriate relationship with a teenage boy. The Mother also allowed under aged drinking to occur in their home. The Mother found out about Father's affair in 1997. The Father moved out of the marital residence and informed Mother that he wanted a divorce.

The Father filed for divorce on August 18, 1997, on the ground of irreconcilable differences. The Mother filed an answer on September 3, 1997, admitting that the parties suffered from irreconcilable differences.

On June 4, 1998, the Mother filed a counter-complaint for custody, alimony, child support, and an equitable division of the marital estate alleging adultery, cruel and inhuman treatment, and inappropriate marital conduct. On February 5, 1999, Father amended his complaint for divorce alleging inappropriate marital conduct. On February 22, 1999, Father filed a petition for contempt alleging Mother's violation of the trial court's order of January 12, 1998, in that she failed to pay the country club dues, homeowner's association dues, that she took $1,000.00 out of the parties credit line, that she liquidated $1,769.00 from the parties money market account, and that she attempted to write a check for $16,850.00, which was the parties remaining balance on the line of credit.

The trial of this case occurred in July 1999. The trial court awarded Father a divorce from Mother on the ground of inappropriate marital conduct and restored the parties the rights and privileges of unmarried persons. Next, the trial court addressed the custody and visitation arrangements of the parties' four minor children without a comparative fitness analysis. The trial judge stated in a memorandum filed on July 30, 1999:

> It should be noted that the court's consideration of this case has been made more difficult by the lack of credibility of Mrs. Muirhead. She not only was untruthful during her deposition testimony but contradicted herself on several occasions during her testimony at trial. Other testimony given by her was simply not believable. Moreover, the evidence indicated she has been untruthful in her dealings with others.

> Father is awarded a divorce on the ground of inappropriate marital conduct. In the late 1980's, Mother had an affair with another man with potentially disastrous results to the parties and their children. She was addicted to cocaine and has used

-2-

marijuana (on several occasions with a teenage boy). She had an inappropriate relationship with a teenage boy in 1991-92, and a similar relationship with another teenager in 1996. In 1996 or 1997, Father gave up on the parties marriage and, himself, entered an extramarital relationship with another woman . . . .

The court has struggled with custody of the parties' four minor children. Ordinarily, the court would feel it to be in the best interests of the children for them to be placed with their mother allowing the father to devote his efforts to earning income for their care. Placing the children with their mother in this case, however, carries significant risks. While the evidence does not indicate the mother has exposed the children to inappropriate behavior since the end of 1996, she has demonstrated the capacity to do so in the past. Had the custody issue been awarded at the time of the separation of the parties their custody would have been awarded to the father. Since that time, however, they have lived with the mother and there is little evidence to indicate they have not done well. In order to maintain some semblance of stability in their lives and considering the desires of the parties' two older children, the court reluctantly will leave custody with the mother.

The court considers it critical to the custody arrangement that the father remain in position to monitor the children's condition.

The trial judge found that the Father has the ability to earn $100,000.00 per year and set child support at $2,675.00 per month.

With regards to the property division, the trial judge stated:

Ordinarily, this court considers marriage a partnership with each party's contribution considered to be of equal value to the other's. It would follow that upon dissolution of the partnership, each party should equally share in the wealth that had been accumulated during its lifetime. In the present case, however, during most of the marriage Mother did not subscribe to the marital partnership and did not contribute to the wealth created by Father. In the opinion of the court, she is not entitled to an equal share of that wealth. In addition, Mother has demonstrated a pattern of squandering assets while Father has demonstrated the ability to conserve them. In dividing the property and awarding alimony, the court has attempted to give Mother enough property and income to enable her to take care of the children during their minority and to leave Father in a position to be able to assist the children to continue their education beyond high school.

The trial judge awarded the Mother the home and the majority of the contents but gave her the sole responsibility for her indebtedness on her credit cards created by her after she began to receive temporary support. She was also awarded a judgment against Father for $10,000.00. The trial judge awarded the Father his 401K account, his retirement plan, the 1997 tax refund, the 1991

Ford van, and some miscellaneous items. The trial judge awarded Mother rehabilitative alimony of $750.00 per month for six (6) months and $300.00 a month for thirty-six (36) months thereafter.

In a Supplemental Memorandum filed August 2, 1999, the trial judge stated:

> Mother is in willful contempt of the agreement of December 16, 1998, and the order of the court entered pursuant to that agreement, by withdrawing $500.00, more than allowed from the home equity line of credit; by withdrawing the parties joint NationsBank money market fund in the amount of $1,769.00, and attempting to withdraw $16,850.00, on the parties' home equity line of credit on March 11, 1998 . . . .
>
> Father shall be allowed to claim the children as exemptions for federal income tax purposes.

The final decree of divorce was entered on August 16, 1999.

The primary issue on appeal is the custody of the minor children. Appellate review of the trial court custody decision is *de novo* upon the record accompanied by a presumption of the correctness of the findings unless the preponderance of the evidence is otherwise. *See* T.R.A.P. 13(d). The Father maintains that the trial court erred in awarding custody of the children to the Mother. We agree. Appellate courts are reluctant to second guess a trial court's determination regarding custody and visitation. *See Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). We reverse the trial judge's award of custody to Mother because the preponderance of the evidence establishes that Father is more comparatively fit than Mother. The trial court did not use a comparative fitness analysis. First, the trial court stated that "[h]ad the custody issue been awarded at the time of the separation of the parties their custody would have been awarded to the father." Then, went on to state that "[s]ince that time, however, they have lived with the mother and there is little evidence to indicate they have not done well" and "[i]n order to maintain some semblance of stability in their lives and considering the desires of the parties' two older children, the court reluctantly will leave custody with the mother." It appears that the trial court was displeased by the Mother's conduct throughout the marriage but awarded her custody simply because the children had done well since they had lived with her. "Continuity, however, does not trump all other considerations. Depending on the facts, a parent who has been a child's primary caregiver may not necessarily be comparatively more fit than the other parent to have permanent custody of the child." *Gaskill*, 936 S.W.2d at 630-31.

When considering child custody, a court must consider many factors and make a custody determination based upon the best interest of the children. See Tenn.Code Ann. § 36-6-106 (listing the factors to be taken into consideration). When both parents seek custody, the child's best interests are determined by using a comparative fitness analysis. *See Bah v. Bah*, 668 S.W.2d 663, 665-666 (Tenn. Ct. App. 1983). Guidance in the statutorily mandated comparative fitness analysis is provided in *Bah*:

To arrive at the point of decision with whom to place a child in preparation for a caring and productive adult life requires consideration of many relevant factors, including but certainly not limited to the age, habits, mental and emotional make-up of the child and those parties competing for custody; the education and experience of those seeking to raise the child; their character and propensities as evidenced by their past conduct; the financial and physical circumstances available in the home of each party seeking custody and the special requirements of the child; the availability and extent of third-party support; the association and influences to which the child is most likely to be exposed in the alternatives afforded, both positive and negative; and where is the greater likelihood of an environment for the child of love, warmth, stability, support, consistency, care and concern, and physical and spiritual nurture.

*Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983).

The Mother was the primary caregiver for most of the marriage. However, the record contains serious questions regarding Mother's ability to be a good parent. The Mother displayed a consistent pattern of dishonesty and an inability to tell the truth during her deposition, during the trial, and in everyday life situations. The Mother has had inappropriate relationships with teenage boys, had a male friend to the house while the children were home as late a 4:00 a.m., is consistently unable to get one of the parties' sons up in time for school, and the same son has a problem handing in homework assignments. She was held in contempt for ignoring the order of the trial court regarding the use and dissipation of marital funds. She is financially irresponsible.

The Father has demonstrated his ability to provide parental guidance and authority. He cared for the children when Mother worked outside the home at restaurants and when she would stay away from home not informing Father of where she was or what she was doing, or when she would return home. The Mother testified that she did not worry about the children when Father cared for them because she knew he would take good care of them. While living in Pennsylvania, Father had enough of Mother's misconduct and behavior. He moved out and took the children with him. While it is true that Father had an extramarital affair, he has in every other way been a consistent father and a good parent. Between the time of the separation and the divorce, Father went to church with Mother and the children. He willingly accepts more visitation than ordered and participates in the children's activities.

Despite grave misgivings, the trial court allowed its custody decision to be dictated primarily by the timing of the divorce decree. Despite the fact that the children lived in the interim with the mother and that the two older children expressed their desire to live with their mother, the decided preponderance of the evidence dictates that in a comparative fitness analysis the father must prevail.

A comparative fitness analysis leaves little doubt that the children's best interests would be served by changing the present custody arrangement. The Father is comparatively more fit to have custody of the children than Mother. Upon review of the evidence in this case, we conclude that it is in the best interests of the children that primary custody be changed to Father.

The next issue on appeal is the division of the marital property. The Mother maintains that the trial court failed to make an equitable division of marital property contrary to T.C.A. § 36-4-121. Evidence in the record does not preponderate against the trial court's division of marital property.

The trial court's division need not be equal to be equitable. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn.Ct.App. 1988). It appears to be an equitable division, accordingly, we affirm the trial court with respect to the division of marital property.

The next issue on appeal is rehabilitative alimony. The Mother maintains that the trial court erred in failing to provide her with sufficient rehabilitative alimony and in awarding Father the tax deduction. Trial courts have broad discretion in the nature, amount, and duration of spousal support (*See Garfinkel v. Garfinkel*, 945 S.W.2d 744, 748 (Tenn.Ct.App. 1996)), and appellate courts are generally disinclined to second-guess a trial court's spousal support award unless it is not supported by the evidence or is contrary to public policy. *See Brown v. Brown*, 913 S.W.2d 163, 169 (Tenn.Ct.App. 1994); *See also Ingram v. Ingram.*, 721 S.W.2d 262, 264 (Tenn.Ct.App. 1986).

In the present case, the trial court's award is not supported by the evidence. In the Final Decree, the trial court stated:

> Mother is awarded rehabilitative alimony in the amount of $750.00 a month for six months, payable on or before the first day of the month, beginning in August 1999. Beginning in February 2000, Father will pay rehabilitative alimony to Mother the sum of $300.00 a month for 36 months. The alimony payments prescribed herein will be paid directly to Mother and Father's duty to pay such alimony payments will terminate on Mother's death or remarriage.

The Mother should receive rehabilitative spousal support. She has a GED and has taken some college level courses. There is nothing to prevent her from becoming gainfully employed. We modify the trial court's award to $500.00 for a period of 36 months.

Since we reverse the trial court's award of custody from Mother to Father, the issue regarding the tax exemption raised by Mother is without merit.

The Mother's request for reimbursement of the cost of the transcript is denied. The case is remanded to the trial court for resolution of issues relating to child support and visitation. Costs of appeal are taxed to the Mother.

_____

_____
WILLIAM B. CAIN, JUDGE